JEFFERY and others, Executors, Respondents, vs. OSBORNE
and others, Receivers, imp., Appellants.

*November 18, 1910—March 14, 1911.*

*Railroads: Condemnation of land: Parties: Receivers: Removal of
cause to federal court: Appeal: By whom taken: Sufficiency of
notice: Law of the case: Evidence: Value of land: Damages for
taking: Availability of other lands: Expert testimony: Excessive
award.*

1. Where, pending a proceeding in a state court to condemn land for
a railroad company, the company is placed in hands of receivers
in an action in a federal court and such receivers, on their own
application, are made parties to the condemnation action, they
take that action as they find it, subject to the disabilities of the
railroad company, and the case does not become one of federal
cognizance so as to entitle them to have it removed to the fed-
eral court.

2. Where interests have been acquired in the subject of controversy
by legal succession, as in the case of administrators, assignees
in bankruptcy, or receivers, the persons acquiring such inter-
ests, on being made parties to the action, may prosecute an ap-
peal from a judgment therein adverse to the interests they rep-
resent.

3. Where in a condemnation action to which receivers of the rail-
road company had been made parties defendant judgment was
rendered in terms against the defendant company, a notice of
appeal by the receivers, properly entitled in the action and giv-
ing the date and amount of the judgment but referring to it
as being against the "defendants," and an undertaking on ap-
peal describing the judgment as one against the receivers, were
sufficient to give the appellate court jurisdiction.

4. Legal propositions upon which the decision of the supreme court
was based in the opinion on a former appeal are, whether right
or wrong, the law of the case upon subsequent trials or appeals.

5. *It seems*, as an original proposition, that if lack of opportunity
for expansion be a proper element to consider in estimating
damages to a manufacturing plant a part of whose land is taken
for railroad purposes, evidence that other adjoining land was
readily purchasable, or was in fact purchased, at moderate cost,

upon which the plant could be enlarged, would be admissible and proper to be considered by the jury to mitigate such damages.

6. But where, upon a former trial, the railroad company procured an option upon adjoining land and tendered it to the owner of the plant to replace the land taken, and the supreme court on appeal from the judgment sustained the trial court's rejection of the offer on the ground that it was not material that plaintiff could move his plant to other land, or, in effect, swap land for the accommodation of the railroad company, the question was foreclosed on the second trial, and proof of the availability and price of adjoining land was not admissible.

7. Experts in the manufacturing business, acquainted from long years of experience with the values and needs of plants of that kind, are competent to testify to the value, as part of a manufacturing plant to which it belonged, of a strip of land taken for the right of way of a railroad company, though having no knowledge at all as to the value of bare land in the vicinity, especially where there is practically no dispute on the question of the value of the strip as mere land.

8. The refusal of the trial court, on motion, to strike out the evidence of a witness on the ground that, in stating the value of a strip taken by a railroad company, he had included damages to the entire tract from which it was taken and had thus duplicated damages, was not a prejudicial error where the verdict was amply supported by the evidence of seven disinterested experts.

9. An instruction to the jury in a condemnation suit that in estimating and determining the fair market value of the strip of land taken they should consider that it was "part and parcel of and used in connection with the tract and premises of the plaintiff," also the "use to which it was in whole or in part devoted," and "the uses to which it was or was intended by the owners in the immediate future to be applied," was not improper as permitting the jury to duplicate damages. *Jeffery v. C. & M. E. R. Co.* 138 Wis. 1, distinguished.

10. It is settled law in this state that in awarding damages for the taking of land for railroad or highway purposes the strip taken is to be valued as part and parcel of the entire tract of which it formed a part; that the landowner is entitled to recover the difference between the fair market value of the whole property before the taking and the value of what remains after the tak-

ing; and that the actual use and intention of the proprietor is to be considered as well as the adaptability of the property for some other use in future.

11. In a proceeding to condemn land for a railroad, the juries in two successive trials having awarded substantially the same amount of damages, which, though large, is supported by ample evidence, the court declines to interfere on the ground that the award is excessive.

MARSHALL, J., dissents.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Affirmed.*

The facts so far as they are essential are stated in the opinion.

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *T. W. Spence* and *J. V. Quarles, Jr.,* of counsel, and a separate brief by *Jackson B. Kemper,* of counsel; and the cause was argued orally by *Mr. J. V. Quarles, Jr., Mr. Spence,* and *Mr. Kemper.*

For the respondents there was a brief by *Thomas M. Kearney* and *James Cavanaugh,* and oral argument by *Mr. Kearney* and *Mr. W. D. Thompson.*

The following opinion was filed January 10, 1911:

WINSLOW, C. J.   This is a proceeding by an electric railway company to condemn a strip of land 100 feet in width running through the manufacturing plant of the respondents at Kenosha.   The case was once here upon an appeal from the verdict of a jury fixing the damages at $125,000 (*Jeffery v. C. & M. E. R. Co.* 138 Wis. 1, 119 N. W. 879), and the judgment was reversed and the action remanded for a new trial.   While the case was pending here the railway company was placed in the hands of receivers in an action in the federal courts, and upon return of the case to the trial court such receivers were made parties defendant on their own application.   A second trial resulted in a general verdict for

the plaintiffs, assessing the damages at $133,000. From judgment against the railway company upon this verdict the receivers have appealed.

Some preliminary questions are raised which will be first considered.

Immediately after the order made by the trial court admitting the receivers as parties to the action, they presented a petition for the removal of the case to the United States court on the ground that the case became one of federal cognizance, such receivers being officers of the United States and the matter in litigation involving property in the hands of such receivers. This application was denied and, as we think, rightly so.

The receivers came into the action not as necessary parties thereto, but simply as proper parties to maintain and defend the property rights which had been placed in their hands. They succeed to the interests of the railway company, but their rights in the case are no broader than the rights of the corporation itself. They take the suit as they find it, subject to the disabilities of the party whose interests they represent. Their presence raises' no question of federal cognizance. *Speckert v. German Nat. Bank,* 98 Fed. 151; *Gableman v. P., D. & E. R. Co.* 179 U. S. 335, 21 Sup. Ct. 171.

The judgment in the case was rendered in terms against the railroad company, and further provided that, upon payment into court of the amount of damages awarded, the exclusive use of the condemned premises should vest in the company for railroad purposes. The notice of appeal was entitled in the case, giving the names of both the company and the receivers as defendants, and gave notice that the receivers appealed from the judgment "rendered by the circuit court of Kenosha county in the action above entitled, entered on the 30th day of November, 1909, in said court in favor of the plaintiffs *and against said defendants."* The undertaking accompanying the notice also described the judgment as

one recovered against the receivers. Upon these facts the respondents now claim, *first,* that the receivers have no right of appeal, and, *second,* that they have not in fact taken an appeal.

Both contentions must be overruled. As before stated, the receivers were proper parties to the action. By their order of appointment they were required to take possession of the property of the defendant corporation, manage its business, and prosecute and defend all such actions as might be necessary or advisable for the proper protection of the property and the trust vested in them. It was plainly their duty to defend these proceedings, and just as plainly their duty to take an appeal from the judgment if, in the exercise of a reasonable and sound discretion, it seemed that prejudicial error had occurred, by reason of which the amount of the award had been increased. The strip in question had been taken possession of by the railroad company and $50,000 had been paid into court by the company as damages, being the amount awarded by the commissioners. The rights of the company in the strip were valuable and it was essential that those rights be protected by the receivers. As to the right of the receivers to appeal from the judgment there can be no serious question. The general rule is that where interests have been acquired in the subject of the controversy by legal succession, such as the interests acquired by administrators, or assignees in bankruptcy, or receivers, the persons acquiring such interests may, on being made parties to the proceeding, prosecute an appeal from a judgment against the party whose interests they represent. Elliott, Appellate Procedure, §§ 133, 137.

As to the form of the notice and undertaking on the appeal there is doubtless something to be desired. The judgment was not described with exact legal accuracy in either paper; nevertheless there was no possibility of mistake. The action was correctly entitled, and the dates and amount of the judgment properly given. It was called in the notice a judg-

ment against the "defendants" and in the undertaking a judgment against the receivers, naming them in their official capacity. In legal effect the judgment might properly be said to be a judgment against the receivers in their official capacity, because while it did not bind them personally it was adverse to the interests of the trust which they represented and were bound to protect and defend, and in this sense was a judgment against them. In any event there could be no question as to the judgment which was referred to in the appeal papers, and the verbal inaccuracy, if any there was, in the notice and undertaking cuts no figure.

We pass now to the merits of the appeal. The piece of land which has been condemned here is a strip 2.3 acres in extent and is 100 feet wide and 1,013 feet long north and south, running through a large automobile manufacturing plant. While it took no substantial buildings, it separated the principal buildings of the factory on the east from the testing track on the west and took space upon which a building had already been begun. The factory was situated in the outskirts of the city of Kenosha and there was vacant land to the west and to the north. The witnesses for the plaintiff, who placed the damages at somewhere from $125,000 to $200,000, all testified that opportunity for expansion had much to do with the value of manufacturing plants and sites, and the testimony was further to the effect that by the taking of this right of way the opportunity of expanding the factory upon the premises owned by the plaintiffs on the west was very seriously impaired, if not practically destroyed. The plaintiff Thomas B. Jeffery himself testified that after the condemnation proceedings were commenced he had purchased lands immediately north of his buildings and east of the right of way, comprising something less than thirty acres, at $1,100 to $1,200 per acre, and that he also purchased a block of land on the east of his factory for $24,200. Upon these premises so purchased he had erected additional factory

buildings and thus expanded the plant.    It was also admitted
on the trial that at the time of the taking vacant land could
be bought immediately north of the plaintiffs' buildings for
$1,100 to $1,200 per acre.

Mr. F. L. Mitchell, being called as a witness for the plaint-
iffs, testified that in his opinion the plaintiffs' plant was
worth $500,000 before the taking of the strip in question and
$350,000 to $375,000 immediately after the taking, and that
opportunity for expansion had much to do with the value.
Upon cross-examination Mr. Mitchell was asked the follow-
ing question in several different forms and upon objection the
evidence was excluded:

"*Q.* Now, I desire to ask you whether the fact that to the
north and south and east there were other available lands pur-
chasable at approximately the market value of suburban
lands, say a thousand dollars, or thereabouts, an acre, would
not make a material difference in the valuation that you
would put upon this plant before and after the taking?"

The same question was also raised in a different form by
the refusal of the court to give to the jury the following in-
structions which were requested by the defendant:

"3. While you may not take into consideration the price,
or the opportunity of acquiring adjoining land for any con-
templated extension of the plant, in mitigation of damages,
you may consider the same as bearing upon the market value
of the plant; that is to say, the existing opportunity of ac-
quiring land for additional buildings and for piling and stor-
ing lumber and other material may be considered by you, ap-
plying the evidence of such opportunity and of the cost of
such additional land solely to the question of the decrease in
the market or salable value of the remainder of the plant, and
to aid you in weighing the opinion testimony of witnesses as
to the lessening of the market value of the part not taken, by
the taking of the strip."

"8. You may consider the expansion and enlargement of
the plant since the taking and the manner in which the same
has been accomplished as evidence of the capacity for such

enlargement immediately after the taking, and the availability of particular portions of the tract for improvements incidental to such expansion, as bearing upon the question of the lessened value of the part not taken caused by the taking of the strip in question and the opinions of witnesses given thereon."

"12. In determining the diminution, if any, in market value of the property not taken by the taking of the strip, if you determine that any diminution in value was occasioned by lack of opportunity for expansion of the plant, you may consider the market value of adjacent lands and the amount thereof suitable for the uses of the plaintiffs and the amount thereof obtainable by the plaintiffs as an element in determining the amount of such diminution of market value and as bearing upon the weight to be given to the opinion of witnesses as to the diminution of the market value of the property not taken."

The instructions given by the court touching this question were as follows:

"In the examination of certain of the witnesses questions were propounded which included reference to parcels of real estate lying outside of the lands owned and occupied by the plaintiffs March 3, 1906. In reaching your determination in this case you will not consider the availability, if any, of lands outside of the lands in question owned by the plaintiffs March 3, 1906, or that such outside land might have been acquired by the plaintiffs, or that they have since acquired any such lands. Such matters may not be shown or considered in this case for the purpose of reducing the compensation to which the plaintiffs are entitled. The owners were not required to move part of the plant to other lands for the accommodation of the defendant railroad company. The compensation to which the owners are entitled is to be based upon the conditions as they are proven to have existed March 3, 1906, before the taking of the strip, and after the taking of the strip. The evidence offered and received in this case as to the then market value of land in the immediate vicinity of the tract owned by the plaintiffs may be considered by you in determining the value of the parcel taken by the railroad company, and the damage, if any, to the remain-

der of the land of which such tract taken formed a part on the 3d day of March, 1906, and in considering the weight and value to be given by you to the opinions expressed by the several witnesses."

All of these rulings raise the same question, namely, whether the admitted fact that other adjoining land was readily purchasable upon which the plant could be enlarged was a proper fact to be considered by the jury in estimating the damage to plaintiffs' property, in view of the testimony to the effect that lack of opportunity for expansion had much to do with the estimates of value of such property.

As an original proposition we should find it very difficult, if not impossible, to sustain the rulings of the trial court. If, as the witnesses testified, the damages would be enhanced because opportunity for expansion of the works was impaired or destroyed by the taking of the strip, it would seem logically to follow that the fact that the opportunity for expansion still existed by the expenditure of a comparatively insignificant sum of money would have a vital bearing on the question of the amount of the damage, i. e. reduction in market value suffered by the remainder of the plant.

It seems, however, that we cannot approach the proposition upon first principles. A very similar question was presented to the court and considered upon the first appeal, and whatever legal propositions were laid down upon that appeal form the law of the case upon all future trials or appeals, whether those propositions be right or wrong. Upon the first trial the subject was approached from a somewhat different standpoint. The taking of the strip encroached upon the east side of the circular testing track, making it necessary to shorten the track somewhat and increase the sharpness of the curves, and the defendant procured from the owner of land on the west an option for the purchase of a strip of land equal in size to the strip taken for a moderate price, which would enable the plaintiffs to duplicate their previous testing track. This op-

tion the railroad company tendered to the plaintiff with an assignment thereof and offered to prove these facts upon the trial. Upon objection the offer was rejected, and this ruling was one of the errors claimed upon the former appeal.

In treating the question this court then said:

"The obvious purpose of this offer was in mitigation of damages. The fact that other lands in the immediate vicinity could be purchased from a third party at a moderate price, to which plaintiff should shift his business, could not be shown to reduce the damages to which plaintiff was entitled. It is not material that he could move part of his plant to other land for the purpose of giving the appellant a right of way, and thus, in effect, swap land for the accommodation of appellant. . . . The only relevancy such an offer could have, if admissible for any purpose, would be as tending to prove the value of land in the immediate vicinity of plaintiff's plant on the question of value of the land taken and damages to other land." [138 Wis. 14.]

It is true that some further reasons are given in the opinion as additional grounds for the holding that the offer of proof was properly rejected, but the ruling is squarely rested upon the legal proposition above quoted as well as upon the other subsidiary grounds, and that proposition must necessarily be considered as settled in this case. That proposition is that the fact that other lands could be purchased in the immediate vicinity to which the plaintiff might shift his business could not be shown to reduce the damages, but might probably be shown on the question of the value of the land taken and damages to other land. If this be the correct meaning of the former opinion, then it is quite apparent that the court's rulings on the second trial were in accord with the principles there laid down, which principles are the law of the case.

In charging the jury the trial court told them plainly that they were not to consider the availability of lands outside of the lands owned by the plaintiffs at the time of the taking, for

the plaintiffs were not required to move any part of their plant to other lands for the accommodation of the defendant and their compensation must be based upon the conditions existing at the time of the taking; but that evidence of the value of adjacent lands might be considered in determining the value of the parcel taken and the damage to the land not taken.

We are not to be understood as approving of these propositions as independent legal principles, but simply as holding that the rulings are in substantial accord with the rules laid down by this court in the former opinion and which are conclusive so far as this case is concerned.

The foregoing question is the question which was mainly discussed upon this appeal, but there are some other questions raised which will be briefly considered.

It is said that the witnesses who testified as to the value of the plant before and after the strip of land was taken did not qualify themselves to testify as experts. It is true that a number of them were witnesses who lived in Racine and they did not claim to have knowledge of the value of land as land in that vicinity. If the question at issue had been the mere question of the value of land which had no value except for residence or farming purposes, they clearly would not have been qualified witnesses. But this was not the question. There was practically no dispute on the question of the value of the strip as mere land. The plaintiff fixed its value at about $1,100 per acre and no one disputed him. The question was as to the value of the strip as part of the manufacturing plant conducted by the plaintiff, and this was the question upon which these witnesses testified. They showed themselves to be experts in the manufacturing business and well acquainted, from long years of experience, with the values and needs of plants of this kind. It also appeared that they knew, by examination of the property at or very soon after the time when the land was taken, what its situation,

condition, and general adaptability to the plaintiff's business was. This knowledge, we think, qualified them to testify as experts on the question of the value of the manufacturing property before and after the strip was taken, especially in view of the fact that there was no serious controversy as to the value of the land taken considered merely as land not connected with any industry.

George Yule was called as an expert witness for the plaintiff on value. He testified that the value of the plaintiff's plant before the taking of the strip was $600,000 and after the taking was $425,000. He further testified that in considering the reduction in market value which would accrue to the part of the plant left on the east of the track he considered the fact of its not being able to extend. Being asked as to the market value of the strip taken, he stated that it was $50,000, and upon cross-examination that he considered as elements which went to make up this value "the matter of extension of the plant and the growth of the business" and the difficulty and expense of proper supervision in case the plant was extended across the tracks, making two separate plants.

The defendant then moved to strike out Mr. Yule's testimony as to the value of the strip on the ground that he manifestly included in his estimate of value damages to the entire tract and thus duplicated damages, but the motion was denied. It may be possible that, under the rules laid down in the former opinion as to the duplication of the elements of damage, the defendant's motion should have been granted, but we do not find it necessary to decide this question. Even should this be admitted, it does not seem to us that any substantial prejudice resulted from the denial of the motion. Seven disinterested witnesses testified in the case as to the damage to the property by the taking of this strip for railroad purposes, and all but one had placed the damage at somewhere from $150,000 to $200,000, while the remaining witness had

placed it at $125,000 to $150,000. The idea that the strik-
ing out of the testimony of one of these witnesses as to the
value of the part taken would make any substantial difference
in the result of the jury's deliberations seems in the highest
degree improbable. We therefore conclude that if there was
error in the ruling it was nonprejudicial.

The court charged the jury in reference to the value of the
strip taken as follows:

"In estimating and determining the fair market value of
the strip or parcel of land taken by the railroad company you
will consider the fact that said strip of land was part and
parcel of *and used in connection with the tract and premises
of the plaintiffs,* described in the evidence, and you will not
view the parcel taken as an isolated or separate parcel of land.
You will further consider any and all evidence relating to
the situation of said strip, its general location with reference
to the remainder of said plaintiffs' premises, its surround-
ings, *the use to which it was, in whole or in part, devoted,* its
availability and adaptability for valuable uses, its natural ad-.
vantages, if any, arising out of its location and situation, *the
uses to which it was or was intended by the owners in the im-
mediate future to be applied,* and all the other evidence,
facts, and circumstances introduced and appearing upon the
trial which will aid you in arriving at a just determination
of said value."

The appellant contends that this instruction allows the
jury to duplicate damages and is in direct violation of the law
laid down in the opinion of the court upon the former appeal.
At first blush the contention seems to have weight, but we
think that when the former opinion is carefully studied in
connection with the peculiar questions which arose in that
case it will be found that there has been no departure from
the established law either in that opinion or in the charge now
objected to.

Upon the first trial the case was submitted to the jury upon
two special questions, instead of upon a general verdict as
was done upon the second trial. The first of these questions

asked what was the market value of the strip taken considered as a part of plaintiff's entire tract as used in his business; and the second asked in what amount was the fair market value of the remainder depreciated by the taking of the strip.   It was considered that as these questions were framed they necessarily involved and demanded of the jury answers duplicating in some degree the damages.   It was said in substance that the value of the strip as a part of the premises used in the plaintiff's business must include deterioration in whole or in part of the remainder of the plant, and hence the same element was included in both questions and the sum of the answers must duplicate some part of the damages.   It was clearly not intended to overrule or change the law governing the elements of damage in condemnation cases, for the cases which amply justify the charge of the trial court which is now attacked are cited upon page 17 of the opinion on the former appeal.   Really the only point decided was that the form of the questions rendered duplication of damages inevitable, although some language in the opinion may seem to justify the idea that the decision goes further.

Since a very early day in this state it has been very well settled that in awarding damages for the taking of lands for railroad or highway purposes the strip taken is to be valued as part and parcel of the entire tract of which it formed a part; that the landowner is entitled to recover the difference between the fair market value of the whole property before the taking and the value of what remains after the taking; that the actual use and intention of the proprietor is to be considered as well as the adaptability of the property for some use in the future.   *Welch v. M. & St. P. R. Co.* 27 Wis. 108; *Driver v. W. U. R. Co.* 32 Wis. 569; *Watson v. M. & M. R. Co.* 57 Wis. 332, 15 N. W. 468; *Meinzer v. Racine,* 74 Wis. 166, 42 N. W. 230; *Washburn v. M. & L. W. R. Co.* 59 Wis. 364, 375, 18 N. W. 328; *Alexian Brothers v. Oshkosh,* 95 Wis. 221, 70 N. W. 162; *American States S. Co. v. M. N. R. Co.* 139 Wis. 199, 120 N. W. 844.

These cases, except the last, were in mind when the former opinion was written, as is demonstrated by the fact that a number of them were cited in the opinion, and had there been any intention of departing from them that intention would have been clearly expressed.

It is evident that the charge of the court now attacked was in substantial conformity with the law as settled in numerous decisions, and that law, not having been disturbed by the opinion on the previous appeal, is controlling here and entirely justifies the charge.

It is claimed that the damages are excessive. Were this the first verdict we should feel some hesitancy in sustaining it, but there have now been two verdicts of substantially the same amount in this case by juries whose fairness is in no way impeached. There was ample evidence upon both trials justifying the finding of the large amounts which the two juries have found. We see no reasonable probability that another trial would result differently, nor do we feel that there is any amount which the court can say that the jury should have found rather than the one which they actually did find.

*By the Court.*—Judgment affirmed.

The following opinion was filed February 8, 1911:

MARSHALL, J. (*dissenting*). I think fatal error was committed in holding that evidence of there being ample opportunity for respondents to purchase land adjacent to the manufacturing premises for use in expansion of the business was not admissible as bearing on damages to the property not taken, and, further, in refusing to instruct the jury that evidence of such opportunity was proper for consideration on such question. If the premise upon which my brethren grounded their decision be correct the conclusion is correct also. My judgment is that their reasoning was from a wrong premise; *first,* because the question at issue was ex-

pressly excluded from the former opinion instead of being passed upon in favor of respondents; *second,* if such question were not so excluded the former opinion is certainly very ambiguous in respect thereto and, therefore, should be construed in favor of a theory which will not convict this court of making what all now agree would be, as an original matter, a clearly wrong and exceedingly unjust decision.    For myself, I have no hesitancy in saying that I had no idea upon the former occasion of agreeing to a conclusion such as the court now reads from the opinion then rendered.    I filed a dissenting opinion with reference to one vital question, treating the matter at considerable length.    I did not mention the subject in hand because, as I read the opinion, so far as the subject was touched upon, it was in favor of the position taken by appellants on the second trial.    That I gave careful attention to the language used before, must be supposed from my analysis of that part treating of the measure of damages, about which I will speak later.    Certainly I would not have allowed the decision on the other point, now confessed to be wrong, pass without vigorously protesting, had I understood it as the court now does, but would have discussed the matter fully in the opinion which I wrote.

On the first appeal it appeared that at the trial defendant offered proof in mitigation of damages, by showing it had an option, which was at plaintiff's disposal, to purchase a tract of land adjacent to the manufacturing plant and suitable for extension thereof; that the optioned land was purchasable at a low price compared with the value claimed for land taken and damages to the land not taken.    The court on the second trial interpreted what was said in the opinion as to the rejection of that offer as holding in such a case that proof of the market value of land available in place of the land taken is not admissible either as bearing on the value of that taken or damages to the land not taken.    As indicated, while there is, as I understand, unanimity of thought that such doctrine,

from an original standpoint, is wrong, my brethren confess it was written into the former opinion and so the court is powerless to correct it now.

To determine correctly what the court on the former occasion intended to decide we must start by facing the proposition it assumed to be dealing with. That can best be appreciated by this language of the opinion whereby the attempt was made to concisely state the matter:

"The obvious purpose of this offer was in [*note the language*] mitigation of damages. The fact that other lands in the immediate vicinity could be purchased from a third party at a reasonable price, to which plaintiff should shift his business, could not be shown to reduce the damages to which plaintiff was entitled. . . . What has been heretofore said applies here as to the tender [*note the term again*] *in mitigation of damages,* which it was obviously offered for. *The only relevancy such an offer could have,* if admissible for any purpose, would be as *tending to prove* the value of land in the immediate vicinity of the plaintiff's plant on the question of *value of the land taken and damages to other land.*"

It will be seen the court, industriously, distinguished between proof *"in mitigation of damages"* and proof bearing on the *value of the land taken and damages to the other land.* It then proceeded to hold that, as an offer "in mitigation of damages," it was incompetent under any circumstances, and that as to the other purpose, not intended by the offer, it was properly rejected for reasons stated, which were curable. The distinction between the two phases of the matter was evidently attempted to be emphasized.

As to the first phase mentioned, the court characterized the offer as an attempt to compel the plaintiff to submit to an offer to "swap land for the accommodation of appellant" and thus mitigate damages. Turning to the other phase it was remarked that, "The only relevancy such an offer could have, if admissible for any purpose, would be as tending to prove the value of the land in the immediate vicinity of plaintiff's

plant on the question of value of the land taken and damages to the other land," plainly suggesting that for such purpose (note that such was the identical purpose we now have under consideration) evidence of the purchasable value of adjacent available and suitable land might be received.

As it seems to me the court thus, industriously, even if somewhat ambiguously, reserved the question as to whether such evidence for such purpose was relevant. Having done so the court proceeded to show that the evidence was not relevant for such purpose under the circumstances of the offer, so confining the discussion to that as to leave the matter in reserve as to whether, with infirmities removed, the evidence would have been relevant, and, at least, without casting any doubt on the question, and, in a reasonable view, suggest that it might.

"But," says the opinion, "the offer was not competent on the question of value of the land embraced in the option;" because it "was not supported by any sworn testimony." "The contents of the option were not made known, except by a general statement." It "was not offered formally, so that counsel could examine it, so far as we can discover from the record. Nor does it appear that the option was in force when the offer was made."

Summarizing somewhat, the foregoing is followed thus:

"It is very obvious that it would be a dangerous rule to allow an adverse party, for the purpose of establishing the value of land, to put in evidence a writing purporting to be an option to sell at a named price, without any other proof verifying the facts stated in the option. This would, in effect, be to allow the appellant to make proof by declarations of third parties, not under oath."

Did not that by reasonable, if not necessary inference, suggest that proof of the value, for the purpose in contemplation here, was proper, though the manner of proof in the then situation for the particular reasons mentioned was improper?

The discussion in the opinion was closed by conclusions in strict harmony with what we have said. Note the language of such closing: "The offer made . . . had no materiality, because . . . appellant could not transfer interests or rights *in lands in mitigation of damages,* and it was not competent on the question of value of the land therein described or in the vicinity." That is, it had no materiality in any event, on what the court referred to as "in mitigation of damages" and was not competent on the other question, that of the "value of the land taken and damages to the other land," because, under the circumstances the court had referred to, going to avoidable infirmities in the offered proof, it was not competent to show the value of the land described in the option. Not being competent therefor, of course, it was not as bearing on the ultimate fact in controversy. It was, in that respect, as if a witness to prove value were interrogated in respect to the matter in advance of proper proof in respect to his competency to testify on the question.

From the foregoing does it not appear quite plain that the court before did not intend to decide that, in a case of this sort, proof of the market and purchasable value of adjacent suitable land for the business disturbed by the invasion and deprivation in controversy, is not competent on the subject of "value of the land taken and damages to other land?" It does to me, and I wish as emphatically as possible to wash my hands of any intention of having been a party to making a decision now conceded to be wrong, and from which seemingly flows a decision conceded to be unjust in fact if right in law.

Was I derelict before in thinking that the opinion would be construed as I contend now it should be, and so neglecting to treat the subject in my independent opinion, as I did the other dominating one, endeavoring to escape responsibility for a seemingly radical departure from the settled law in respect to the latter, which we are now happily agreed would

have been such departure, a way of escape from the dilemma
I did not share in creating being found by treating that part
of the opinion on the subject of measure of damages as am-
biguous, and reading out of the obscurity a statement of the
law in conformity to the views I then expressed? If I were
so derelict then, looking at the language I have analyzed
fairly; in the most favorable aspect it will reasonably bear
for respondents, is it not ambiguous, permitting, reasonably,
of the meaning I read out of it being easily discovered therein?
If so, then why does not the rule which applies to the con-
struction of contracts and statutes govern, viz.: of two reason-
able meanings, one that is consistent with the law and will
lead to a just result, and one that will render the contract
or statute unlawful or lead to some unjust or some absurd
result, the former should be adopted? I think these ques-
tions should be answered in favor of appellants instead of,
unnecessarily, as it seems, confessing that the court wrongly
decided an important question on the former appeal and in-
flicting the consequences thereof on the appellants on this ap-
peal. I do not doubt but what my brethren would fully
agree with me in answering my last proposition in the affirm-
ative. Where we differ is in respect to the others.

The instructions given on the last trial indicate to my
mind, very clearly, that the trial court understood the subject
under discussion was treated before in two aspects, as I have
indicated, in one proof of the market value of outside avail-
able land being thought improper and in the other not so.
Endeavoring to cover the first phase, supposed to involve
whether plaintiff could be compelled to swap land in "mitiga-
tion of damages," the judge said:

"Such matters may not be shown or considered in this
case for the purpose of reducing the compensation to which
the plaintiffs are entitled. The owners were not required to
move part of the plant to other lands for the accommodation
of the defendant railroad company."

Directing attention to the other phase of the matter the court added:

"The evidence offered and received in this case as to the then market value of the land in the immediate vicinity of the tract owned by plaintiffs may be considered by you in determining the value of the parcel taken by the railroad company, and the damage, if any, to the remainder of the land of which such tract taken formed a part."

That was the very purpose for which the rejected evidence was offered, not in "mitigation of damages" as the term was used in the former opinion. The rejected requests were phrased accordingly. The purpose thereof was to inform the jury that proof of opportunity to obtain suitable adjacent land and the probable cost thereof while not to be considered "in mitigation of damages" were in determining "damages to the other land." It seems that the ambiguity in the former opinion was exaggerated by the trial judge, leading him to confuse the two ideas and so reject evidence plainly competent for one purpose, mistaking the offer thereof to be for another, and, not appreciating the somewhat shadowy distinction apparent from the facts of the former case there made between proof "in mitigation of damages" and circumstantial proof of the actual damages made in the way attempted, he got the idea that circumstantial proof thereof was not permissible. That is the only key I can see to unravel the obscurity in the charge. Looking at the language thereof and the ruling the charge seems fatally contradictory. Looking at the quoted language alone last referred to it seems in harmony with the spirit of the rejected instruction, but applying it to the rejected evidence and the case in general in the light of the former opinion, it seems the judge was of the opinion that this court held that the lessened value of land not taken caused by taking a part of the entire tract could not be established circumstantially. I insist that there is

nothing in the former opinion necessarily requiring that view.

For the reasons stated I think the judgment should be reversed. There is at least one other reason which of itself calls for the same result. I think the trial court, though as an original proposition giving the law to the jury correctly, violated the law of this case in instructing, as he did, on the measure of damages. The instruction is quoted in the opinion of the court. As I read it, counsel for appellants are right in the contention that the law as there stated is condemned in the former opinion. That condemnation was the occasion for my labor in writing the quite lengthy independent opinion, hoping to prevent any permanent departure from long settled rules. While I still think I took the right view of the opinion and the one the bench and bar in general have read out of it, if it be otherwise, and the difficulty was only in stating ambiguously a correct rule, then I quite agree that the meaning which will render what was said harmonious with previous adjudications on the subject, if to be found in the language used, should be adopted rather than one which will not. So, on the whole, I am content to unite with my associates in treating the former opinion as not overruling previous cases on the subject of damages. I am so content, particularly, as to what the court really intended, because soon after the opinion was filed *American States S. Co. v. M. N. R. Co.* 139 Wis. 199, 120 N. W. 844, and *Krier v. M. N. R. Co.* 139 Wis. 207, 120 N. W. 847, were decided, in which the law was stated as in my independent opinion in this case, all the justices concurring.

I have given considerable attention in this opinion to the logic with which I heartily concur, enabling the court to construe one ambiguous feature in the former opinion in harmony with settled principles, thus saving the judgment from reversal. But why the same logic does not also apply to the other ambiguous feature, thus avoiding the result of

affirming a judgment which is wrong from an original view-point, upon the ground that wrong has been made right by a previous wrong decision, I am not able to understand.

A motion for a rehearing was denied March 14, 1911.