KRAMER, Respondent, vs. CHICAGO & MILWAUKEE ELECTRIC RAILWAY COMPANY, Appellant.

*November 11, 1922—February 6, 1923.*

*Street railways: Collision with automobile: Contributory negligence: Backing out of garage: Failure to signal upon stopping: Proximate cause: Question for jury: Excessive damages.*

1. All questions of law determined and involved on a former appeal become the law of the case on all future trials or appeals, whether right or wrong.
2. A city ordinance specifying the manner in which a vehicle shall cross from one side of the street to the other is not applicable to an automobile backing out of a garage to the other side of the street.
3. In an action for injuries to the driver of an automobile which was struck by a street car, the question whether the failure of the driver of the automobile to raise his hand as a signal that he was slowing down or stopping, as required by a city ordinance, was the proximate cause of the injury is for the jury.
4. Where the evidence on the subject of contributory negligence on a former trial was substantially the same as the evidence on such question on a subsequent trial, the holding of the appellate court on the former appeal that an automobile driver was not contributorily negligent as a matter of law, and that the question was for the jury, is the law of the case on a subsequent appeal.
5. A verdict of $10,000 for permanent injuries to the chest, back, and nervous system of a thirty-three-year-old plaintiff, who prior to the accident was strong and healthy and earned between $6.50 and $7 a day, and in addition thereto between $70 and $80 a month by working nights, and who after the accident was able to earn merely from fifty cents to $1.50 a day, is not excessive.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Edgar L. Wood* of Milwaukee, attorney, and *A. L. Gardner* of Chicago, of counsel, and oral argument by *Mr. Wood* and *Mr. J. H. McQuaid* of Milwaukee.

For the respondent there was a brief by *Glicksman, Gold & Corrigan* of Milwaukee, and oral argument by *Walter D. Corrigan.*

The following opinion was filed December 5, 1922:

DOERFLER, J.    This case came before this court on a former appeal on facts substantially as in the instant case, and the decision will be found in 171 Wis. 627, 177 N. W. 874.

All questions of law determined and involved in that appeal become the law of the case on all future trials or appeals, whether right or wrong. *John v. Pierce,* 176 Wis. 220, 186 N. W. 600; *Jeffery v. Osborne,* 145 Wis. 351, 129 N. W. 931; *Strehlau v. John Schroeder L. Co.* 152 Wis. 589, 142 N. W. 120.

On the former appeal the issue raised of defendant's negligence with respect to the speed of the car and failure to keep a proper lookout was submitted to the jury, and such questions were adversely decided against the defendant. In the instant case, on substantially the same evidence, a like result was achieved, as shown by the verdict of the jury. The former case was reversed for two reasons: (1) because the court failed to instruct the jury that any violation of the provisions of the ordinances involved constituted negligence as a matter of law, and (2) because the trial court omitted in its charge to the jury any reference to the ordinance of the city of Milwaukee, known as sec. 1242, which was pleaded by the defendant, and under which plaintiff was required to have a light visible both on the front and

the rear ends of his automobile at and immediately prior to the happening of the collision.

Counsel for the defendant contend that the plaintiff was guilty of contributory negligence as a matter of law:

*First.* Because he failed to comply with the provisions of sec. 1219 of the ordinances of the city of Milwaukee, and that under the evidence such failure constituted a proximate cause of the injury.

In its answer to the fifth question of the special verdict on the trial from which this appeal is taken, which question was answered by the court, it is held that the plaintiff in crossing from the west side of First avenue to the east side thereof failed to do so in the manner required by sec. 1219 of the ordinances of the city of Milwaukee. This section provides as follows:

*Crossing from one side of the street to the other.*

Section 1219. A vehicle crossing from one side of the street to the other shall do so this way,

not this way,

nor this way.

By the answer to the sixth question of the special verdict the jury found that plaintiff's failure to cross from the west to the east side of First avenue in the manner required by sec. 1219 of the ordinances of the city of Milwaukee did not proximately contribute to produce his injury.

It is contended by plaintiff that this ordinance has no application to the instant case, and an examination of the diagrams contained in and being a part of the ordinance is persuasive of the correctness of this view. Under this ordinance an operator of an automobile traveling along the right side of the street, desiring to make a turn and to reverse his course, must pursue a course similar to that outlined in the first diagram set forth in the ordinance. The reason for this requirement is evident. In making the turn indicated the operator faces the traffic as it approaches on the other side of the street and is thus enabled to regulate the turn with safety. The course pursued by the plaintiff in backing out from the garage located west of the highway in question unquestionably was the only proper, safe course to pursue; for in his endeavor to cross the street he could first observe the traffic approaching on the west side of the street nearest to him and at the same time make observations with respect to the oncoming traffic on the east side of the street. If the city had deemed it necessary to regulate the course of an automobile backing out in cases similar to the instant case, it would undoubtedly have established a proper course by ordinance. The jury, however, under proper instructions, held that the plaintiff in backing out his machine in the manner as it appeared from the evidence was not guilty of any negligence which proximately contributed to the injury, and in this respect we refer to the evidence of plaintiff's witnesses to the effect that while the plaintiff was backing his machine and crossing the sidewalk on the west side of the street he made his observation by looking towards the south and ascertained that the defend-

ant's car at that time was two and three-fourths blocks south of the garage.

In holding as we do that sec. 1219 of the ordinances of the city of Milwaukee has no application to a situation as presented in this case, no further consideration need be given to defendant's exceptions on that subject.

*Second.* That plaintiff failed to comply with the provisions of sec. 1227 of the ordinances, and that such failure was a proximate cause of the injury as a matter of law.

By the answer of the court to the seventh question of the special verdict it was found that the plaintiff, in slowing up or stopping on the street, failed to give a signal to those behind, as required, by raising the whip or hand vertically. In its answer to the eighth question of the special verdict, however, the jury found that such failure on the part of the plaintiff did not proximately contribute to produce the injury.

Sec. 1227 of the ordinances of the city of Milwaukee is as follows: "In slowing up or stopping, a signal shall always be given to those behind by raising the whip or hand vertically."

Plaintiff's evidence pertaining to the alleged negligence involved, with respect to this last named section of the ordinances, is to the effect that when he arrived with his machine on the north-bound tracks he looked toward the south and the car then was still a distance of about a block from him. It is true that defendant's evidence strongly contradicts that of the plaintiff, and, if the testimony of its witnesses is to be believed, the car was rapidly approaching and was a comparatively short distance from the place of the collision when the plaintiff appeared with the automobile on the north-bound tracks. If it be true that the car was still about one block to the south of the automobile at the time when plaintiff arrived on the north-bound tracks, the negligence of the plaintiff in failing to give the signals

required by the ordinance might properly be considered as too remote and as not proximately involving the plaintiff in contributory negligence. At any rate the question was a proper one, under the evidence, to be submitted to the jury, and the jury having decided adversely to the defendant, the verdict in that respect cannot be disturbed. *Grimm v. Milwaukee E. R. & L. Co.* 138 Wis. 44, 119 N. W. 833; *Dahinden v. Milwaukee E. R. & L. Co.* 169 Wis. 1, 171 N. W. 669; *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 84 N. W. 823.

*Third.* That the evidence conclusively shows that the plaintiff violated the provisions of sec. 1242 of the ordinances of the city of Milwaukee, which required, among other things, that the plaintiff have attached to the rear of his automobile a lighted lamp, which shall be so displayed as to be visible from the rear of the machine, and that such alleged violation of such ordinance constituted a proximate cause of the injury as a matter of law.

By the answer of the jury to the ninth question of the special verdict the jury found that the plaintiff did not drive the automobile, at the time of the collision, without a lighted lamp attached thereto which was so displayed as to be visible from the rear of the automobile. There was ample credible evidence to sustain this answer of the jury to this question, and such answer cannot now be set aside.

*Fourth.* That, independent of the violation of any ordinance, the plaintiff was guilty of negligence which proximately contributed to the injury as a matter of law.

The evidence of the plaintiff shows that when he arrived upon the north-bound tracks, and just before proceeding towards the north, he looked to the south and the car was still about a block distant. Under ordinary circumstances, a person situated similarly as the plaintiff was would have been able to clear the tracks and avoid a collision with the car without difficulty. He immediately attempted to clear

the tracks, and by reason of the slippery condition of the roadway and rails was unable to propel his machine. It can fairly be assumed from the evidence that when he first attempted to clear the tracks the wheels slipped on the icy pavement, and that what plaintiff meant when he used the expression "the wheels turned around," was not that the wheels were turning and that the machine was being propelled forward but that the wheels were turning without the machine making any progress. The time necessarily intervening from the time that plaintiff took his last view of the street car and while he was endeavoring to start his car forward, and the difficulties he encountered with the slipping of the wheels, and during the effort in driving to the west side of the street when he was unable to clear the east rail of the north-bound tracks, presented proper matters for consideration by the jury; and, the jury having absolved the plaintiff from contributory negligence in its answers to the questions on that subject included in the special verdict, such conclusions must be deemed final.

The evidence in the first and the last trials on the subject of contributory negligence being substantially the same, the law as determined in the first appeal must be deemed applicable. Had the court on the first appeal been of the opinion that the plaintiff was guilty of contributory negligence as a matter of law, it would have been the duty of the court to have reversed the cause and ordered a dismissal of the plaintiff's complaint.

The trial court was of the opinion that the damages awarded were high, but it did not feel warranted in setting aside the verdict or in ordering a reduction thereof. Three trials had been had of the action. On the first trial the damages were assessed at $475. On the second trial the complaint was amended and the prayer for damages greatly increased. On such trial the damages were assessed at $15,000, and the trial court set aside the verdict because the

damages were grossly excessive, and ordered a new trial. On this trial the damages were assessed at $10,000.

It appears from the evidence that after the first trial complications set in which had a tendency greatly to enhance the damages. The evidence is undisputed that before the accident the plaintiff was strong and healthy and was able to and did perform the heaviest kind of labor; that he worked not only in the daytime, being employed by the International Harvester Company, where he earned between $6.50 and $7 a day, but that he also materially added to his earnings by working in a garage at night, where he earned between $70 and $80 per month additional. An examination of the plaintiff revealed contusions of the chest, of the right leg, and abrasions and contusions of the back, and particularly over the sacrum. He was spitting blood for a period of about three weeks, and during that time was under the care of a physician. He also suffered pain and was sleepless. When he resumed work, about one month after the happening of the injury, he could only do light work, and he was required to call for assistance in doing heavy work or lifting. He worked for the Harvester Company somewhat over a year after the injury, and since that time has performed work in a garage, where he earned from fifty cents to $1.50 a day. There is evidence that the fifth lumbar vertebra was shifted or twisted from its proper position on the sacrum, and that the dorsal vertebræ, located immediately in the rear of where he had suffered a severe shock or contusion of his chest, are abnormal, resulting in considerable stiffness of his back. X-rays were taken, and, according to the testimony of reputable physicians, disclose the injury both to the dorsal and lumbar vertebræ. Plaintiff's physicians also testified that a number of tests made of plaintiff's reflexes indicate an abnormal condition of the nervous system; that the sensation of plaintiff in his lower limbs has been greatly affected; that his pulse is weak; and

that his muscles are tense. There is also expert medical evidence on the part of the plaintiff that his condition is permanent and that the plaintiff will be unable to perform heavy labor in the future. At the time of the trial plaintiff was about thirty-three years of age and a married man. Many of the symptoms testified to by plaintiff's experts were denied by the experts for the defendant. In fact, if the testimony of the defendant's experts is to be believed, the position of the lower lumbar vertebra on the sacrum is perfectly normal and the plaintiff's condition is normal.

It is much to be regretted that the learned members of the medical profession so often radically differ on subjects with respect to which they are presumed to have special knowledge. Such differences of opinion are not an unusual occurrence in the trial of a lawsuit, but rather constitute the rule. A due appreciation of the functions of a medical expert as a witness in the trial of a case like the instant case would seem to require greater harmony in the opinions. When the expert is sworn as a witness he has but one duty to perform, and that is to tell the truth, the whole truth, and nothing but the truth; he is not in any sense an advocate; he is a member of a learned profession, one of the most essential and valuable from the standpoint of human welfare. He is required to aid in the enforcement of the laws and to render what assistance he can, so that substantial justice may be done. What is here said is not intended as a criticism or slur upon the medical profession. Its object is to bring home a realization that court proceedings are designed for the general welfare in order that justice may be done between man and man. A mutual co-operation on the part of the profession to obviate as far as possible a situation which appears to the mind of a layman as irreconcilable is highly to be desired.

While we are much in the same position as the learned judge before whom this case was tried in the circuit court,

we cannot say that we have had all of the advantages which were offered him during the trial.   He feeling it his official duty under the facts and circumstances of the case not to disturb the verdict, under the peculiar circumstances of the case and the various results achieved in the different trials, we do not feel warranted in setting aside this verdict as to damages or in modifying it.

The other errors complained of have received our careful attention, but we find that none of them are prejudicial.

The judgment of the lower court must therefore be sustained.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 6, 1923.