17015

CITY OF ORANGEBURG, Respondent v. ALMA K. BUFORD, BELK-HUDSON, INC. *ET AL.,* Appellants

(87 S. E. (2d) 822)

*R. A. Bowman, Esq.,* of Orangeburg, *for Appellants,*

*Messrs. Rosen, Horger & Sims,* of Orangeburg, *for Respondent,*

June 8, 1955.

OXNER, Justice.

This proceeding was instituted on June 25, 1949, by the City of Orangeburg to condemn, for the purpose of establishing a public alley, a strip of land approximately 14 by 47 feet belonging to Mrs. Alma K. Buford. The landowner contended that there was no necessity for the taking and further asserted that the value fixed in the City's declaration was wholly inadequate. A hearing was had before Judge Brailsford who, in an order filed on August 12, 1952, held that a reasonable necessity existed for condemning the property; required the City to deposit an additional sum to secure the payment of any amount ultimately determined as proper compensation; vested title to the property in the City; and directed that the case be entered on the calendar for trial before a jury for the purpose of determining the amount of compensation and to whom same should be paid.

The case was tried before Judge Baker at the October, 1953, term of the Court of Common Pleas. The jury awarded compensation in the sum of $1,000.00. From the judgment entered thereon, Mrs. Buford has appealed.

It is first contended that the Court erred in refusing to permit counsel for the landowner to read her answer to the jury. Prior to the introduction of the testimony, the trial Judge fully and clearly explained to the jury the issues to be tried and the general rule to be applied in fixing compensation. The reading of the pleadings could have served no useful purpose. The answer contained one defense which had been previously disposed of in the order of Judge Brailsford. The remaining portion related to evidentiary matters which were later fully developed in the testimony. This exception is overruled.

We next consider the exceptions relating to the exclusion of certain parol evidence offered by the landowner as to the terms of a lease made with Belk-Hudson, Inc. A brief review of the facts is necessary for a proper understanding of the question presented. Mrs. Buford owned a lot in the City of Orangeburg fronting on Russell Street upon which there was a two-story brick building extending back a distance of 140 feet, with a rear width of 47 feet. This building had been rented by Belk-Hudson, Inc. for a long number of years. On May 4, 1949, the parties entered into a renewal lease wherein, in consideration of a monthly rent of $350.00, Mrs. Buford leased this property to Belk-Hudson, Inc. for a term of five years beginning July 1, 1950, with the right on the part of the lessee to extend said lease at the same rental for an additional period of five years. The lessee agreed at its own expense to construct an addition at the rear of said store building "extending approximately 25 feet," which was to be in keeping with the present building and constructed of the same kind of material. The lessee further agreed to excavate a basement under the entire first floor.

On the trial of the case the landowner offered testimony by the manager of Belk-Hudson, Inc. to the effect that it was the understanding of the parties that the lessee would extend the building to the rear as far as possible but since they did not know exactly where the sewer line was, the extension was described in the lease as "approximately 25 feet." According to this witness, it was later determined that the building could be extended a distance of 35 feet, leaving four feet at the rear of the lot for a sewerage line, and the construction plans were made on this basis. The work was commenced shortly after the execution of the lease on May 4, 1949, and at the time of the service of the condemnation notice on June 25th, the excavation had been completed, the concrete foundation poured, and the erection of the walls commenced.

284

As a result of the City condemning the rear 14 feet of this lot for the purpose of establishing a public alley, the lessee had to abandon its plans to extend the store building a distance of 35 feet and restrict same to 25 feet. This reduced the construction costs $11,040.00.

The Court excluded all testimony tending to show that the proposed addition to the building was to be 35 feet instead of 25 feet as stated in the lease, upon the ground that such testimony varied and contradicted the terms of the lease.

We think the testimony was admissible. The rule that parol evidence is inadmissible to vary, explain or contradict a writing is one for the benefit of the parties to the instrument and is generally limited to them and their privies. It does not apply to a controversy between third parties, or to a controversy between a third party and one of the parties to the instrument. *Ex parte Moore,* 161 S. C. 107, 159 S. E. 503; *Peoples National Bank of Greenville v. Upchurch,* 183 S. C. 147, 190 S. E. 515; 20 Am. Jur., Evidence, Section 1131, page 985; 32 C. J. S., Evidence, Section 861. This is so because a stranger, not having assented to the instrument, is not bound by it and is free to vary or contradict it, and consequently his adversary must be equally free to do so. The City of Orangeburg was not a party to the lease above mentioned and was not bound by it. It was, therefore, permissible for either party to the present controversy to show by parol evidence the full and true character of the lease transaction.

The City also contends that the proffered testimony was inadmissible upon the further ground that it related to improvements which had not been made when the property was condemned. In addition, it is argued that any extension of the store beyond the 25 feet stipulated in the lease would constitute a mere gift to the landowner which could not be considered in fixing compensation.

We do not think that any part of the proposed extension could be properly classified as a gift. Any extension of the

building beyond 25 feet would necessitate more of the lot being used by the tenant. The transaction was mutually advantageous. The tenant was to have the use of more property and the landowner was to receive the benefits of the addition upon termination of the lease.

Although the improvements had not been made, it ▪▪ it is clear that except for the condemnation, ten feet of the property condemned, would have been used in the construction of the addition to the store which the lessee occupied. The contemplated use was not imaginary or speculative but one that was reasonably certain. The landowner was entitled to compensation upon the basis of the most advantageous and profitable use of her land. In estimating the value of property condemned, all of the uses to which it may be applied, or for which it is adapted, which affect its value in the market, are to be considered, and not merely the condition it is in at the time and the use to which it was then applied by the owner. *Nantahala Power & Light Co. v. Moss,* 220 N. C. 200, 17 S. E. (2d) 10; 18 Am. Jur., Eminent Domain, Section 244. It is true that the improvements on the property condemned were to be made in conjunction with those on adjacent property but "the fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value." *Olson v. United States,* 292 U. S. 246, 54 S. Ct. 704, 709, 78 L. Ed. 1236.

In line with the foregoing authorities, we think it is ▪▪ proper to show the contemplated use of a portion of the land condemned for an extension of the building. Its special adaptability for this purpose is a proper element for consideration in determining its present value. It does not follow from this that the owner may recover for the frustration of the plan to extend the building. This is so because the taking of land terminates all contracts in respect to its use. Nichols on Eminent Domain, 3rd Ed., Vol. 4, Section 13.33. But the potential value of the area for the

use contemplated by the tenant may have enhanced its present value and may properly be considered by the jury in fixing compensation. *United States ex rel. Tennessee Valley Authority v. Powelson*, 4 Cir., 138 F. (2d) 343; *Jeffery v. Osborne*, 145 Wis. 351, 129 N. W. 931.

In conclusion, it may not be amiss to state that any right of compensation by Belk-Hudson, Inc. is not involved on this appeal. Apparently from the testimony it has been compensated for the work which it did in the area condemned.

Judgment reversed and case remanded for a new trial.

STUKES and LEGGE, JJ., concur.

BAKER, C. J., and TAYLOR, J., concur in result.

BAKER, Chief Justice, (concurring).

The evidence which the trial Judge excluded, upon objection by respondent, did not vary or contradict the terms of the lease, but was in explanation of "approximately 25 feet." This testimony should have been admitted as it was competent to show the most advantageous and profitable use of appellant's land.

The facts of this case do not justify or call for the application of the general rule as contained in those cases cited by Mr. Justice Oxner, to wit, *Ex parte* Moore, 161 S. C. 107, 159 S. E. 503; *Peoples National Bank of Greenville v. Upchurch*, 183 S. C. 147, 190 S. E. 515, 518. This principle is as follows:

" 'It is a well established rule that parol testimony is not rendered inadmissible because it contradicts or varies the terms of a written instrument to which the litigant offering the testimony is not a party'."

The evidence in issue, as I have already stated, does not contradict or vary the terms of the lease, and, next, the respondent herein was not offering any testimony which collaterally attacked the written instrument. Since the word "approximately" was used in the lease, the appellant had

the right to prove the number of additional feet that could have or would have been used by her lessee.

TAYLOR, J., concurs.