THE DURHAM AND NORTHERN RAILROAD v. TRUSTEES OF BULLOCK CHURCH.

*Eminent Domain—Condemnation of Land—Damages—Evidence—Appraisement.*

1. Upon an inquiry in a summary proceeding by a railroad company to condemn land belonging to a church for the purpose of constructing its road, evidence of the value of the land prior to the construction of the road, and subsequent thereto, *for church purposes,* and, also, evidence that the congregations accustomed to worship there were disturbed, and facilities for the accommodation of their horses and vehicles were destroyed or impaired, whereby the utility and value of the land was diminished as church property, is competent in ascertaining the damages to be assessed.

2. The opinion of witnesses who have, by their opportunities, qualified themselves to testify on such matters, is competent as to the fact and *quantum* of damages.

3. Where the appraisers appointed to assess the damages reported the amount thereof at three hundred dollars, to which the owner of the property did not except, but the railroad company did, upon the ground that such assessment was excessive, and appealed to the Superior Court, where the jury returned a verdict for a greater sum: *Held*, that judgment could not be properly rendered for a greater amount than the original assessment, as the only issue on the appeal was, whether such assessment was *excessive*.

The plaintiff brought its summary proceeding to condemn land of the defendants for the purpose of right-of-way for its railroad. Commissioners were appointed to view the land and assess damages. They did so, and made their report, assessing damages to defendant at three hundred dollars, to which the plaintiff excepted and objected, upon the ground that the damage assessed was excessive.

In the Superior Court, issues were submitted to a jury. On the trial, the parties examined divers witnesses. Certain of those examined by the defendants, respectively, testified as follows, the plaintiff excepting to parts of their testimony, as indicated in the course of their examination:

The defendants introduced M. L. WINSTON, who testified: "I have been accustomed to attend Bullock Church all my life; have examined the boundaries. There is a ditch around three sides of the church land. The lot is a *parallelogram*, with the longest side on the railroad, the other three sides bounded by private property. The public highway has been taken and occupied by the railroad, and the highway put upon church land—that is, on land condemned for right-of-way."

Defendants proposed to show that the land was used for the purpose of hitching horses, etc.

Plaintiff objected. Objection overruled. Exception.

"Some horses are hitched on the east line; some on north and south ends, on the church lands. There is nearly three-fourths of an acre left. Before railroad was laid out, have

seen two or more horses hitched to the same tree, besides many buggies and other vehicles being on the ground. The owner of the adjacent land cut a ditch, about eighteen inches deep, on the church line, on all three sides, except next to railroad. The church is about 34 x 54 feet, and about 100 feet from the railroad. I have been at the church when the train passed. There is a very large membership."

Defendants then proposed to show the value of the property before the railroad was built.

Plaintiff objected. Objection overruled. Plaintiff excepted.

Witness stated that, before the road was built, he valued the property at about $1,000; now thought it was worth $600. "Taking off the land condemned makes the lot more oblong, being smaller in the rear. Church stands on slight hill; a depression behind the church; church-yard is well wooded. The church is not cut off from the highway. I was one of the commissioners appointed to assess the damages. I am not a member of the Methodist Church; I am a minister of the Christian Church. Before the land was condemned, they had barely enough for church purposes. Taking off one-fourth of the land would depreciate the value of the building."

H. R. GOOCH, witness for defendant, stated "that the lot was in the shape of a parallelogram, with the railroad on the long side of it. Sometimes (before the railroad was built) there was not room enough in the lot for church purposes, and there is not enough now; horses could see train from any part of lot, unless they were put behind the church; have been there during services."

The defendant proposed to show the effect of running trains by the church during services.

Plaintiff objected; objection overruled. Exception.

"The attention of the congregation was diverted from the minister to the passing train. The only way of approach to the church is by the way along side of the railroad, a ditch

having been cut around the other three sides of it. The property was worth $1,250 for church purposes, and was so valued in report to Conference. I consider the railroad has damaged it fully one-half."

On cross-examination, witness said: "I am a member of that church; attention is sometimes diverted by persons coming in; church has not been valued since the report to Conference. The congregation is falling off. Some leave their teams at home and walk, and some have gone to other churches. It is now worth but little for church purposes."

There was a verdict and judgment for the defendants assessing damages at four hundred and fifty dollars, and the plaintiffs appealed.

*Mr. John Devereux, Jr.,* for the plaintiff.
*Mr. R. W. Winston,* for the defendants.

MERRIMON, C. J.—after stating the case: We need not trouble ourselves to settle here the particular rules to be observed in assessing damages under the statutory provisions of this State against railroad companies occasioned by the location of the right-of-way for their railroads across the land of individuals, because the plaintiff requested the Court, among other things, to instruct the jury, " that the defendant is only entitled to recover such actual damages as result from the taking of the land, and such damages as directly flow therefrom," and it gave this instruction. Indeed, it gave all the instructions asked for by the plaintiff, with slight modification, to which there was no objection. The plaintiff cannot therefore complain of the instructions given.

For the present purpose, treating the instructions as correct, we are of the opinion that the exceptions to evidence cannot be sustained. The evidence, in respect to hitching horses, objected to, was not offered for the purpose of showing damages, special, or otherwise, to horses, as suggested

on the argument, but for the pertinent purpose of showing that the value of the small parcel of land of the defendants was impaired by reason of the fact that passing trains on the railroad would tend to frighten, and render unruly and unsafe, horses fastened to trees and other things near to and about the church during, just before, and after, church services. It is of common knowledge that it is convenient and essential at country churches to have sufficient room near to them to fasten horses, where they will stand quietly and safely while the worshipers are assembled at worship. The land in question was devoted to, and used as, a place for public worship. It was useful and valuable for that purpose, and the defendants were entitled to damages, if trains passing over the road rendered it less valuable for the necessary incidental purpose of hitching horses. The impairment of the value of the land in such respects constituted an element of damage that directly flowed from the location of the road on it. That horses might be fastened to trees, and other convenient things, on the small parcel of land, in view of the purpose to which it was devoted, rendered it, in some measure, valuable. The location of the road on it rendered it less valuable for that essential purpose—created the necessity for erecting stalls, screens, and the like, for horses, at an outlay of money that otherwise would have been unnecessary. In this view, the evidence was certainly competent. *Railroad Co.* v. *Wicker*, 74 N. C., 220.

Unquestionably it was competent to show what the land was reasonably worth before the location of the railroad on it, preparatory to showing what it was worth after the road was constructed and used. This is a common, reasonable, and necessary way of proving the *quantum* of damages, when it appears that the construction and use of the road produces the difference in value. Woods R. L., p. 899; 3 South. on Dam., 441.

104—34

The value of land, as of all kinds of property, is much a matter of opinion, and a witness should have knowledge of such value, gained from experience, information and observation, to fit him to testify in that respect. Otherwise, his opinion will be at random—worthless and misleading. But the objection here was not to the qualification of the witness to testify—it does not so appear—and it would be unfair to merely infer that such was the ground of objection. It may be that he was qualified; that he had bought and sold land in that neighborhood; that he had knowledge of sales made by others from time to time, and particularly of church property. So far as we can see, in the absence of objection on that account, the witness was qualified—the presumption is he was—else objection would have been made for the reason he was not. Woods R. L., p. 941, *et seq.;* 2 *id.,* 945, 946.

Nor has the third exception substantial force. If the result of the location of the road on the land close to the church was to disturb and distract the attention of the worshipers accustomed to assemble at the church, when assembled for the purpose of worship, so as to impair, or destroy, the usefulness of the property for church purposes, to which it was, and had been, devoted, the property was, on that account, less valuable, unless it was more valuable for some other purpose, and that it was, is not suggested. Indeed, the evidence tended to show that it was of trifling value for any other purpose.

The purpose of the evidence was not, as contended on the argument, to show how much, or how little, the worshipers, severally, or collectively, were, would, or might be, shorn of religious impressions and advantages, but to show that the property was less valuable, in that worshipers would not go there, but would find some safer, more quiet, and agreeable place to worship, until the church, as a place of worship, would be deserted, and of little or no value for church pur-

poses, until the church building would be useful only to be torn down, and the lumber devoted to other purposes, and the land would be worth for any other purpose only a nominal price. While the chief purpose of church organizations is to extend religious advantages and afford opportunity to worship Almighty God, through their officers and agents they own much valuable property, both real and personal, to be affected favorably, or adversely, as to its pecuniary value, like similar property owned by individuals, and the law takes notice of and protects it just as it does the like property of individuals, in material respects. Injury to such property, in a respect that impairs its usefulness for the purposes to which it is devoted, constitutes an element of damage recoverable, when such injury is the direct cause of the act complained of, or when it flows directly from that act as a consequence. If the effect of the location and use of the plaintiffs' road had been to ruin the church building in question, would not the defendants have had their remedy? Most assuredly they would. If such effect has seriously injured its usefulness—not in a spiritual point of view as to worshipers there, but as a church property, shall they not have redress? If the road is so near to the church that passing trains of cars disturb the people, distract, or divert their attention, for one cause or another, so that they cannot, or will not, properly worship there, shall the defendants not have redress for the injury so in the nature of the matter done the property as a place of worship? Is the property, on that account, not less valuable? Would any church organization give as much money for the property, with such disadvantage so wrought, for church purposes as it would otherwise do? Obviously, it would not. Did such injurious effect—great or small—flow, as a consequence, directly from the location and use of the plaintiff's road? If it did, such effect constitutes an element of damage cognizable in this proceeding. The purpose of the evi-

dence excepted to was to prove that it did, and it had that tendency. It was, therefore, competent. Wood's R. L., p. 925, *et seq.*

The commissioners who viewed the land assessed the damage at three hundred dollars. The plaintiff objected, and excepted to this assessment as excessive. Thereupon, the parties waiving irregularities in the course of the proceeding, the question of the *quantum* of damages was submitted to a jury in term-time, and they assessed the damages at four hundred and fifty dollars. The defendants did not except to the assessment made by the commissioners. Hence, in this Court, the plaintiff contended that the Court below could not give judgment for a greater sum than three hundred dollars.

The report of the commissioners to assess the damage, when made and filed, gave character and point to the proceedings as to damage. " Any person interested in the said land may file exceptions to said report, and, upon the determination of the same by the Court, either party to the proceedings may appeal to the Court at term, and thence, after judgment, to the Supreme Court. The Court, or Judge, on the hearing, may direct a new appraisal, modify or confirm the report, or make such order in the premises as to him shall seem right and proper," &c. *The Code,* § 1946. Acting upon this provision, the plaintiff excepted to the report solely on the ground that the assessment was excessive. The defendants did not except at all, and thus, impliedly, signified their satisfaction with the assessment as made.

It might have been questioned whether, regularly, the issue raised by the plaintiff's exception to the report ought, strictly, to have been submitted to a jury, but it might be, certainly by consent, and this was given. At all events, by implication, there was no objection. *Railroad Co.* v. *Wicker,* 74 N. C., 220; *C. C. Railroad Co.* v. *Phillips,* 78 N. C., 49.

Informally, an issue not put in writing was submitted to the jury. What it was does not appear, except by inference. It seems that it was, in substance, "What damage has the defendants sustained?" But this question was not raised by the exception and the state of the record. The inquiry was limited to the question, whether or not the assessment was excessive, and if so, to what extent. If the defendants thought it too small, they should have excepted, at the proper time, or afterwards, by permission of the Court. The plaintiff's exception did not have the effect to vacate the report and put the question of damages at large. It was sufficient, and continued to have force, so far as appears, until, for proper cause, the Court should set it aside, or modify it in some respect, and it still has effect.

The last objection was not made in the Court below, but, as the error appears in the record proper of the proceeding, we take notice of and correct it. *Thornton* v. *Brady,* 100 N. C., 38; *Hutson* v. *Sawyer, ante,* 1.

The jury have, by their verdict, in effect, found that the assessment of damages by the commissioners was not excessive. The judgment must, therefore, be set aside, and judgment entered in the Court below in favor of the defendants for three hundred dollars.

                              Modified and affirmed.