RALEIGH, CHARLOTTE AND SOUTHERN RAILWAY COMPANY v.
MECKLENBURG MANUFACTURING COMPANY.

(Filed 24 May, 1915.)

**1. Railroads—Condemnation—Measure of Damages—Diminished Value.**

Compensation to the owner of lands acquired by a railroad company in
condemnation proceedings is required by law, and includes indirect in-
juries to the land as well as those of a physical kind which will directly
diminish its value, and which are capable of legal proof, and do not rest
upon mere conjecture, speculation, or surmise.

**2. Same—Adaptation of Property—Prospective Use.**

The compensation to be awarded the owner of lands for a right of way
acquired thereon by a railroad company under condemnation proceedings
must be full satisfaction for the diminution in value of the property as a
whole, considering the purposes for which it was used, and is not con-
fined to the value of the property in its present state and condition, but
should be extended so as to include its adaptation for future uses, and
the depreciation of the whole resulting from the use of a part for railroad
purposes.

**3. Railroads—Condemnation—Measure of Damages—Cotton Mills Settlement
—Damages to Plant—Employees—Incidental Use.**

Where a railroad company has condemned a right of way over lands
used for a cotton mill plant and settlement, it is competent to prove, in
showing the consequent depreciation of the value of the whole property,
that it had been appreciably affected to its detriment by noises, smoke,
cinders, jarring, discomfort, inconveniences, and other like causes inci-
dent to the running of the trains on the right of way, and by the risks
and dangers of fire and injury to employees and their children; and that
the use of the right of way, because of such things, would disorganize its
help and tend to drive its operatives away, by rendering their condition
uncomfortable, if not intolerable, requiring the substitution of cheaper
and inferior labor, thus lowering the standard quality of the output of
the mills; but the proof should be confined to the general facts, excluding
such particulars as the number of hands the changed conditions would
cause to leave, and an estimate of depreciation in value, based upon a
capitalization of the pay rolls which will be increased by the evil effects
of the right of way and the trains upon the employees and their families.

**4. Evidence—Witnesses—Experience—Knowledge—Experts.**

Upon the question of the amount of damage to a cotton mill plant and
settlement caused by the acquisition and use of a railroad right of way
on the lands, it is competent to show by witnesses, having actual knowl-
edge of the lands and its improvements, the situation, uses, and surround-
ings of the same, and also their opinions based thereon, and upon their
long observation and experience in the same kind of business which is
conducted on the premises in question.

**5. Railroads — Condemnation — Measure of Damages — Common Damages —
Special Use.**

The rule that damages common to all persons along the line of an ac-
quired right of way are not recoverable by the owner in condemnation
proceedings does not apply when the land is taken and appropriated to a
use which directly impairs its value by reason of the smoke, jarring, dan-
ger, etc., because of its peculiar nature or particular enjoyment, though
not necessarily in a direct physical way.

**6. Railroads—Measure of Damages—Evidence.**

Upon the question of compensation to be paid the owner of lands for a right of way acquired under condemnation proceedings, it is competent to show the value of the lands, with their improvements, or of the entire plant, before and after the taking, as tending to show the depreciation caused thereby.

**7. Trials—Witnesses—Explanations—Incompetent Evidence—Procedure.**

Questions on cross-examination of a witness for the purpose of testing the value of his testimony may be proper when incompetent on direct examination, and it is permissible for the witness to give his reason when confined within proper limits; and an improper reason will not necessarily render the opinion of the witness incompetent, for there may be other valid reasons, and where the reason is deemed to be incompetent, the objecting party should expressly object to it or ask that it be stricken out.

**8. Appeal and Error—Evidence—Competent in Part—Objections and Exceptions.**

Where objection is made that the answers of witnesses have taken too broad a range, and some of the testimony is competent, the objection should be made to the incompetent matter, specifying it, and not to the answer as a whole.

APPEAL by both parties from *Harding, J.,* at November Term, 1913, of MECKLENBURG.

This is a petition to rehear the former decision in the above entitled case, which is reported in 166 N. C., 168. The petition was filed by the defendant and relates only to the plaintiff's appeal, in which a new trial was given for reasons stated in the opinion of the Court. The proceedings were brought for the condemnation of a right of way over the defendant's lands, upon which it had erected a mill for the manufacture of cotton goods, with its buildings for employees and other appurtenances. The contentions of the parties upon the issue as to damages are thus stated in the opinion of this Court:

"The plaintiff's exceptions are numerous, but all refer to the evidence and the charge on the measure of damages.

"The plaintiff contends that the defendant was entitled as compensation to the value of the land embraced in the right of way, plus any direct actual damages to any part of the remaining land.

"The defendant contends that the compensation to which it is entitled is the difference in the value of its entire manufacturing plant and premises, embracing 20 acres, before the right of way was condemned and afterwards, and that this difference in value is to be estimated by taking into consideration that the operation of a steam railroad would inconvenience and annoy the operatives by the noise, smoke, and inconvenience produced by the trains operating in proximity to their houses; that the dangers and perils to the operatives in going to and from their work would be increased by having to cross said railroad track; that the lives and limbs of the children of the mill operatives will be imperiled

by their crossing said track in going to school and while playing near by; that their parents would be in constant fear, while at work in the mill, lest the children should be run over by the passing trains, and that on account of these conditions the better class of operatives will be driven away and the defendant will be able to secure in their places only inferior help at increased wages, with result of decrease in the quantity and quality of the mill output and an increase in the cost of production, thereby materially depreciating the market value of the property as a cotton manufacturing plant."

This Court held: "The right of eminent domain is granted because the public interest requires that private property shall be taken for public use under the circumstances and in the manner prescribed by law. The owner is entitled as compensation to the actual and direct damages which he may sustain by being deprived of his property. These damages are limited to those which embrace the actual value of the property taken and the direct physical injuries to the remaining property." Referring to the contentions of the defendant as to the considerations, and the facts, which should enter into the assessment of damages, as above set forth, the Court said: "The jury were allowed to consider these as grounds of damages, and also to introduce as experts cotton manufacturers to give their opinion as to the effect upon the value of this mill property by the laying out of the plaintiff's right of way. These experts estimated that the difference on the pay roll from the above causes would be $4,000 to $5,000 per year, which they capitalized at $60,000 to $80,000, and expressed their 'expert opinion' that the plaintiff should pay the defendant this sum of money as damages for the right of way 100 feet wide, of which only some 20 feet probably is actually occupied by the railroad, and a little over 300 yards long." The Court rejected this evidence, which the lower court allowed to be heard, upon the ground that it was conjectural and speculative, and did not fall within the rule laid down, that the defendant was entitled to recover as compensation the actual and direct damages which it may sustain by being deprived of its property, which are limited to those that embrace the actual value of the property taken and the direct physical injury to the remaining property. The defendant asks that we rehear and reverse that decision, upon the following grounds and because of the errors therein, which are assigned in the certificate of counsel, by which we are restricted, as follows:

"1. The Court erred in holding that only evidence of actual physical injury to the land not taken could be considered.

"2. The Court erred in holding that in ascertaining the depreciation in the market value of the land the defendant was not entitled to have the whole plant considered and valued.

"3. The Court erred in holding that the defendant was not entitled to show depreciation in the market value of the land on account of dangers, inconveniences, and annoyances to its mill operatives and their children as the result of the running of trains at grade through the mill village over the plaintiff's right of way.

"4. The Court erred in holding that it was not competent for the defendant to show that the operating of trains over the right of way through the mill village would disorganize help, increase wages, and decrease production of the defendant's manufacturing plant.

"5. The Court erred in holding that the dangers, inconveniences, and annoyances suffered by the defendant, as the result of the operation of trains over the right of way in question, were common to all property owners alike.

"6. The Court erred in holding that the opinion of experienced cotton manufacturers were incompetent to show the depreciation in the market value of the defendant's plant, on account of the dangers, annoyances, and inconveniences resulting from the operation of trains through its mill village.

"7. The Court erred in declaring that the jury were allowed to consider as grounds of damages the estimates of mill 'experts' as to the increased pay roll of the defendant, capitalized at from $60,000 to $80,000.

"8. The Court erred in stating that there was no evidence tending to show that the defendant had lost even one of its operatives by reason of the location of the plaintiff's tracks, or had been forced to pay higher prices to its operatives, or hire inferior help for that cause."

Under each assignment of error, and as a part thereof, the particular part of the opinion of this Court to which it is addressed is set out, for the purpose of showing the ruling of this Court alleged to be erroneous. It is not necessary to repeat them here, as they can readily be found in the opinion. The foregoing statement will be sufficient for a clear understanding of the questions raised on this rehearing.

*Tillett & Guthrie for plaintiff.*
*Cansler & Cansler and J. W. Keerans for defendant.*

WALKER, J., after stating the case: In this case both parties appealed to this Court from the judgment below, the defendant upon the ground that the land was not subject to condemnation under our statute which exempts certain property from the operation of the law. This view was rejected by the Court, the writer of this opinion dissenting. The plaintiff's contention that there were errors in the rulings and charge of the court below was sustained and a new trial ordered.

The first five errors, in our former decision, now assigned, may naturally be considered together, as if we were wrong in holding that only the

value of the land actually taken, and the direct physical injury to that which was left, can be considered, there was error, and the other assignments relate only to the extent of the error. We are satisfied, upon reconsideration of the case, that the rule thus stated by the Court was entirely too narrow and restricted, and if applied without modification, or, at least, full explanation, will not afford just compensation to those whose lands may be appropriated for a public use; but we do not think this requires that the former conclusion or judgment of this Court should be reversed, for reasons to be hereinafter stated.

It may be said, generally, that there are some, if not many, indirect injuries to land, not necessarily of a physical kind, which will diminish its value, and which are susceptible of the kind of proof which the law requires in cases generally. It may, in the beginning, be readily and fully conceded that mere conjecture, speculation, or surmise is not allowed by the law to be a basis of proof in respect of damages or compensation. The testimony offered should tend to prove the fact in question with reasonable certainty. *Byrd v. Express Co.,* 139 N. C., 273; *Machine Co. v. Tobacco Co.,* 141 N. C., 284. There are expressions in the case of *R. R. v. Wicker,* 74 N. C., 220, which give some support to the ruling in this case; but the principles stated in that case have been greatly modified by subsequent decisions of this Court, and we have been brought more in line and into more perfect agreement with the prevailing thought upon this subject, as exhibited in the many decisions of other courts. We are not permitted to apply the same rule in a case of this sort as obtains with reference to one where there has been no condemnation or taking of land for a public use, and where the injury complained of may be no more than a mere inconvenience or annoyance to an adjacent proprietor which is common to all others similarly situated. We hold our property subject to all necessary or reasonable police regulations, and private inconvenience must give way to the public good; but it is quite a different thing when the property of the individual is taken or condemned for public use, for in such a case the positive law requires, as well as justice and equity, that we should make fair and reasonable compensation.

The case of *Austin v. R. R.,* 108 Ga., 671, was relied on in the former opinion to sustain the doctrine that the injury to the part of the land not taken must be direct and physical; but that was not a case of condemnation, where the land was taken for a public use, nor was there any invasion of property or physical interference therewith. The Court held that the right to recover damages or compensation for injury or inconvenience resulting from noise of the passing trains, smoke, jarring or vibration, or any other annoyance, was incident to the taking of the property or some invasion of it, or obstruction of some right or easement connected with or appurtenant to it, and that the inconvenience or annoyance alone

will not furnish an independent ground for the assessment of damages; and this was so, said the Court, because the right to "compensation" is given only where there has been a "taking" of private property. When such is the case, not only the direct but the incidental injury resulting in a diminution of its value may be considered in making compensation. This Court more recently has considered the *Austin case* in *R. R. v. Armfield,* 167 N. C., 464, where it was said: "The rule for awarding damages in condemnation proceedings was not involved in the decision, and, on this question, *Simmons, C. J.,* delivering the opinion, said: 'In such a proceeding the effect of smoke and noise in the operation of trains are properly to be considered in so far as they tend to impair the value of the property'; and, referring to and distinguishing a former decision of the Georgia Court, he further said: 'In our own case of *Steiner v. R. R.,* 44 Ga., 546, the tracks were in the street, immediately in front of plaintiff's residence, physically invading his right of way and thereby giving him a cause of action. When there has been this physical interference, there is a "damage" in connection with the taking of private property, consisting of an easement of right of way, and the plaintiff, being thus damaged, is allowed to show all the elements of damages. The effect of smoke and noise is considered, not as an independent element of damage, but as tending to prove the value after the railroad has taken or damaged property or some right appurtenant.'" The case, therefore, instead of being an authority for excluding annoyance from noise, smoke, vibration, etc., as matters affecting the value of the property, and therefore as proper to be considered in estimating the damage, is strongly the other way, so far as a case where the very point was not involved can be an authority. This Court, on the authority of the Georgia case and many others, deliberately concluded, in the *Armfield case,* that such proof as was offered by the appellee, in regard to noises, smoke, etc., was admissible to show diminution in the value of the land as a basis for the award of compensation. It is there said: "In these and all other cases where this question of condemning a right of way is substantially presented the principle as stated is only intended to exclude considerations of sentiment or personal annoyance, detached from any effect on the pecuniary value of the property or the allowance of damages purely of a speculative character; and accordingly it is held here and in well considered cases elsewhere that in awarding damages for a railroad right of way plaintiff shall be allowed to recover the market value of the property actually included, and for the impairment of value done to the remainder, and that in ascertaining the amount it is proper, among other things, to consider the inconvenience and annoyances likely to arise, in the orderly exercise of the easement, which interfere with the use and proper enjoyment of the property by the owner, and which sensibly im-

pair its value, and in this may be included the injury and annoyance from the jarring, noise, smoke, cinders, etc., from the operating of trains and also damage from fires to the extent that it exists from close proximity of the property, and is not attributable to defendant's negligence," citing *R. R. v. McLean,* 158 N. C., 498; *Brown v. Power Co.,* 140 N. C., 333; *Chicago v. Taylor,* 125 U. S., 161; *R. R. v. Hall,* 78 Texas, 169 (9 L. R. A., 209); *Tel. Co. v. Darst,* 192 Ill., 47 (85 Am. Rep., 288); Lewis on Em. Dom. (3 Ed.), sec. 706 (478); 2 Elliott on Railroads, sec. 978; 15 Cyc., p. 724.

We may pause here to state that we need not decide whether risk from fires likely to be caused by negligence may be considerd in the general estimate, for there is no such question presented by the exceptions, as there was no special instruction given in regard thereto.

We do not perceive why the case of *R. R. v. Church,* 104 N. C., 529, is not an authority for the position that the proof is not confined to direct physical damage to the property, but may include annoyance or inconvenience to those occupying the premises or the buildings thereon, provided the jury find that the value of the property is diminished thereby. There is no substantial difference between the two cases. We will refer to that case a little more fully, as it seems to be a direct and valuable authority as to several of the questions presented in this record. It points out the marked difference between showing a diminution in value of the property, on account of the several annoyances from passing trains, and proving them for the purpose of recovering special damages for the annoyance itself, as a distinct element of damage. The one is proper, and the other is not. The interruption or disturbance of religious services held in the church, by reason of the noise and other causes incident to the running of trains, and the frightening of horses of the worshippers from the same causes, was held to be proper for the consideration of the jury in determining how, if at all, the value of the property as a site for the church had been thereby affected, and not as, in themselves, separate items of damage. We do not see why the case is not parallel with this one. If it is competent to prove those things, as tending to show a diminution in value of the particular land for church purposes, why not apply the same rule to similar annoyances as tending to show a decrease in the value of land for mill purposes? The result is apt to be the same in the one case as in the other, though not, perhaps, of the same degree. The two cases are, at least, sufficiently analogous to make *R. R. v. Church* an authority for the position we have taken. The risk or danger of the property being damaged or destroyed by fire set out by passing trains is another matter which is proper to be taken into account for the purpose of showing how the property has been lessened in value by the location of the right of way on the land, and the word "property" must be taken as including the entire plant, or the land

enhanced in value by the mill, other structures and other improvements placed upon it, and the difference in value is the measure of compensation. These views are strongly supported by many authorities in other jurisdictions. Pierce on Railroads, pp. 210, 211; *Baker v. R. R.,* 236 Pa., 483; *R. R. v. Williams,* 133 Ga., 679; *R. R. v. Nix,* 137 Ill., 141; *Kayser v. R. R.,* 88 Neb., 343; *Moore v. R. R.,* 130 N. Y., 523; *R. R. v. Kirkover,* 68 N. E. (N. Y.), 366; *Summerville v. R. R.,* 22 N. J. Law, 495; *R. R. v. Board of Education,* 32 Utah, 305; *Duke of Buccleuch v. Boards of Works,* L. R. 5, H. L. 418; *Comstock v. R. R.,* 169 Pa., 287; *Summerville v. Doughty,* 22 N. J. L., 495; *R. R. v. Coly,* 73 Wash., 291; *Gas Transp. Co. v. Cartee,* 149 Ky., 90; *R. R. v. Bluchle,* 234 Mo., 471; *Power Co. v. Broneau,* 41 Utah, 4; *R. R. v. White Villa Club,* 155 Ky., 453; *R. R. v. Munsell,* 38 Okla., 253.

The above cases fairly and fully illustrate the prevailing doctrine of the courts and the utmost extreme, in some instances, far beyond those here proposed, to which it has been carried. Instructive cases as to special features of the subject will be found in *R. R. v. Mendosa,* 193 Mo., 518, as to risk from fires affecting the value without regard to probability of fire even by negligence: *Kayser v. R. R., supra,* as to noise, smoke, and other annoyances; *R. R. v. Board of Education, supra,* as to danger of railroad tracks and other hazards and inconveniences, as affecting public school grounds; *R. R. v. Bass,* 9 Ga. App., 83, as to inability to hear over a telephone, prevalence of smoke, dust, and other like facts. The Court said, in *Snyder v. R. R.,* 25 Wis., 60: "There is a very wide distinction between giving damages for such remote and possible injuries and compensating the owner for the actual *depreciation* of his property because of its *exposure* to such hazards and dangers. Whatever may cause the depreciation, the loss to the owner is the same. If in consequence of its exposure to these remote injuries the property is diminished one-half in value, then this decrease in value measures the actual loss to the owner." And in *R. R. v. Hill,* 56 Pa. St., 460: "We do not see much difference, in the nature and certainty of the exclusion of the customers of this mill, between an absolute physical obstruction, directly in their way, and others which continually threaten their lives and limbs in the use of the ordinary means of getting there." This question was carefully discussed in *R. R. v. Cont. Brick Co.,* 198 Mo., 698, with special reference to the exposure of property to fire by the location of the right of way and its proximity to buildings and other inflammable material. The Court said: "A prudent business man would generally prefer to purchase property in which to conduct his business which is not peculiarly liable to destruction by fire, even though the menacing party may be solvent and liable to responsibility in damages." 10 A. and E. Enc. (2 Ed.), pp. 1117 and 1118, and notes 1 and 2, and cases cited. It all comes to this at last, that the landowner is entitled

"to full and complete compensation, and it must include everything which affects the value of that which is taken in its relation to the entire property," as said in *Abernathy v. R. R.*, 150 N. C., 97. The Court also said, in *Brown v. Power Co.*, 140 N. C., 333: "Certainly where, by compulsory process and for the public good, the State invades and takes the property of its citizens in the exercise of its high prerogative in respect to property, it should pay to him *full compensation.* The best authorities are to that effect. . . . The State has conferred upon the company, to enable it to accomplish these beneficent results, one of the highest and most dangerous of its sovereign powers, that of eminent domain. An essential and elementary condition precedent annexed to the exercise of this power is that the owner of property, who is compelled to surrender it, shall have full compensation." It was stated in *U. S. v. Grizzard*, 219 U. S., 180 (5 L. Ed., at 166, 167), that the rule of compensation requires that the landowner should be paid for the part actually taken for the right of way, and in addition thereto justice demands that he also be remunerated for the further loss incurred in the depreciation of what remains of the land which results from such taking, and also in its future use and value, and this loss is not confined to direct physical injury, but the injury should extend to all incidental injuries to the part not taken which are caused by the location of the right of way, and which tend to reduce its value. The Court then says: "To say that such an owner would be compensated by paying him only for the narrow strip actually appropriated and leaving out of consideration the depreciation to the remaining land by the manner in which the part was taken *and the use to which it was put* would be a travesty on justice." In order to arrive at this full compensation, the jury must consider the land with its improvements as a whole and the effect thereon of the appropriation of a part for a right of way, with reference, of course, to any loss in value by reason of such taking and the uses to which the land so taken is to be applied. We so held in *R. R. v. Armfield, supra; Brown v. Power Co., supra; R. R. v. Church, supra,* and the principle is sustained by numerous decisions in other courts. *R. R. v. Hill,* 56 Pa. St., 460; *R. R. v. Cont. Brick Co.,* 198 Mo., 698; *Foust v. R. R.,* 212 Pa. St., 215; *Rouck v. Cedar Falls,* 134 Iowa, 563; *R. R. v. Roeder,* 30 Wash., 247; *R. R. v. L. A. Synod,* 20 Idaho, 573; *Brainerd v. State,* 131 N. Y. Suppl., 221; *R. R. v. Chamberlain,* 100 Va., 402; *Pause v. Atlanta,* 98 Ga., 95; *Jeffreys v. Osborne,* 145 Wis., 351; *R. R. v. Memphis,* 126 Tenn., 275; *R. R. v. White Villa Club,* 155 Ky., 453; *Nelson v. Atlanta,* 138 Ga., 347; *R. R. v. Gordon,* 184 Ill., 456. As we have shown, we held in *Abernathy v. R. R., supra,* that the compensation must be full and complete and include everything which affects the value of the property taken and its relation to the entire property affected. Speaking of the method of ascertaining the value and the depreciation, the Court said

in *Brainerd v. State, supra:* "It is a matter that must be left to the judgment of the court, but it may be safely asserted that no element should be excluded in arriving at the market value of the premises which it is customary for the business world to consider in determining such market value, or which an ordinarily prudent man would take into account before forming a judgment as to the market value of the property which he is about to purchase." And in *R. R. v. Hill,* 56 Pa. St., 460, the Court thus referred to the same subject: "We regard the testimony as but a mode of ascertaining the measure of damages, sanctioned by the authorities, viz., the difference between the value of the property after the construction of the railroad and before; the amount of depreciation when ascertained by proper tests being the amount the owner should be entitled to." But the jury, in fixing the value and estimating the loss, are not confined solely to a consideration of the property in its present state and condition, but may go further and take into consideration the uses to which it may be adapted in the future, and predicating the value upon this also, they will determine what depreciation has resulted by the taking and use of a part of the property. Mills on Em. Domain, sec. 173. We said in *R. R. v. Armfield, supra,* quoting in part from Pierce on Railroads, p. 217: "In estimating the value, all the capabilities of the property and all the uses to which it may be applied or for which it is adapted are to be considered, and not merely the condition it is in at the time and the use to which it is then applied by the owner. Speaking to this same question, Pierce on Railroads, p. 217, states that the author (Lewis on Eminent Domain) says: 'The particular use to which the land is applied at the time of the taking is not the test of its value, but its availability for any valuable or beneficial uses to which it would likely be put by men of ordinary prudence should be taken into account. It has been well said that the compensation is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business and wants of the community, or such as may reasonably be expected in the immediate future. But merely possible or imaginary uses, or the speculative schemes of its proprietor, are to be excluded.' " In this connection we may well refer to what is said in the following cases: "A citizen must surrender his private property in obedience to the necessities of a growing and progressive State, but in doing so he is entitled to be paid full, fair, and ample compensation, to be reduced only by such benefits as are special and peculiar to his land." *R. R. v. Platt Land,* 133 N. C., 266. "It need hardly be said that nothing can be fairly termed compensation which does not put the party injured in as good condition as he would have been if the injury had not occurred. Nothing short of this is adequate compensation." *R. R. v. Heisel,* 47 Mich., 378. Where, in the nature of things, there can be no market value of a piece of land, as separated from an extensive business enterprise in con-

nection with which it is used, its value cannot justly be determined without considering the use to which it has been applied. "The value of the land consists in its fitness for use, present and future; and before it can be taken for public use the owner must have just compensation. If he has adopted a peculiar mode of using that land by which he derives profit, and he is to be deprived of that use, justice requires he should be compensated for the loss. That loss is the loss to himself. It is the value which he has, and of which he is deprived, which must be made good by compensation." *R. R. v. Memphis, supra.*

We are of the opinion that those called "experts" in this case were competent to give their opinion as to the value of the land or plant and its depreciation by the location of the right of way and the uses to which it was afterwards put by the plaintiff. They were not testifying, it appears, strictly as experts, but with actual knowledge of the land and its improvements, its situation, uses and surroundings, and their several opinions were based upon such knowledge, aided by their long observation and experience in the same kind of business which is carried on by defendant on the premises in question. It would seem that the competency of such evidence was expressly decided in *R. R. v. Church, supra,* by this Court. But there are other cases equally as strong in support of its competency. *Davenport v. R. R.,* 148 N. C., 287; *Sykes v. Payne,* 32 N. C., 280; *Wade v. Telephone Co.,* 147 N. C., 222; *Cotton Mills v. Assurance Corporation,* 161 N. C., 562, where the Court said, at p. 564: "The court erred in refusing to permit the witness Taylor, who had twenty years experience in the cotton mill business, to state whether work of this character was the repair of or an addition to the mill plant. The evidence offered was not a mere matter of opinion, but the result of knowledge and observation by the witness. *Davenport v. R. R.,* 148 N. C., 287; *Ives v. Lumber Co.,* 147 N. C., 306; *Morrisett v. Cotton Mills,* 151 N. C., 33. It is true, the jury, upon all the evidence, could have drawn their own conclusion on this point. But the evidence of Taylor, if it had been admitted, would have been only a matter for consideration by them, and not conclusive." As held in *R. R. v. Cont. Brick Co., supra,* the knowledge and experience of such witnesses, acquired while engaged in the same kind of business, adds weight and trustworthiness to their opinions, and theirs is exactly the kind of knowledge that is needed in order to obtain an intelligent estimate of that "just compensation" called for in a case of this kind. See, also, *Jeffreys v. Osborne,* 145 Wis., 351; *R. R. v. Columbia, etc., Synod,* 20 Idaho, 573; *R. R. v. Hill, supra.*

But it is suggested that these supposed elements of damage are common to all persons along the line of railway whose property is similarly circumstanced, that is, there is the same exposure to fire, smoke, noise, dangers, and hazards to persons, as well as property. In the first place,

there is no evidence that there is any plant, the same as this one or bearing any resemblance to it, on the line of this railway, or, if there is, that it is affected in the same way; but apart from this consideration, the dangers, hazards, inconveniences and annoyances, etc., are not, in such a case as this, to be regarded as in any just or legal sense common to other landowners, and that doctrine should not apply when land is taken and appropriated to a use, as here, which directly injures or damages the property, because of its peculiar nature, though not necessarily in a physical way. As we have already shown, this question is virtually settled by the decision in *R. R. v. Armfield,* at last term, 167 N. C., 464, where it was said that those uses of the easement acquired by the railroad company which are likely to interfere with the proper enjoyment of the land by its owner, and which sensibly impair its value, should be considered by the jury, and these include jarring, noise, smoke, cinders, and other annoyances of a similar kind arising from the operation of trains, and risks from fires caused by close proximity to the track. The physical injury or damage to the land not taken would, in a certain sense, be common to all land through which the road would pass, but being a special and distinct injury to this land, it does not, for that reason, destroy or even affect the right to compensation, which is inseparably incident to the right of appropriation to the particular public use. *R. R. v. Bluchle,* 234 Mo., 471, and cases *supra.* The law says: "You may have the land or any easement therein which is reasonably necessary for your purpose, but you must compensate the owner, justly and fully, for it and for any damage accruing to the remainder of his property by reason of the use to which you may put it, and because of its injurious effects upon the property." The damage to the property remaining is considered as much a taking as is the actual appropriation of the part condemned for the right of way, and the cases above cited sustain this view.

It was competent to prove the value of the land, with its improvements, or the entire plant, before and after the taking, as tending to show the depreciation and the amount of compensation. *R. R. v. Church, supra; Brown v. Power Co., supra,* and *Jeffreys v. Osborne,* 145 Wis., 351. In the *Church case* (104 N. C., at p. 529) this Court said: "Unquestionably it was competent to show what the land was reasonably worth before the location of the railroad on it, preparatory to showing what it was worth after the road was constructed and used. This is a common, reasonable, and necessary way of proving the *quantum* of damages when it appears that the construction and use of the road produces the difference in value," citing Wood on Railroads, p. 899; 3 Sutherland on Damages, 441.

We, therefore, conclude that defendant was entitled to prove that the value of its plant had been appreciably affected to its detriment by the

noise, smoke, cinders, jarring, discomfort, inconvenience, and other like causes incident to the running of the trains on the right of way, and by the risks and dangers of fire and of injury to employees and their children, and to show, further, that the use of the right of way, because of such things, would disorganize its help and tend to drive its operatives away, by rendering their condition uncomfortable, if not intolerable, and require the defendant to substitute a cheaper and inferior quality of labor, and thereby reduce its output and lower the standard quality of its goods; but proof of the latter should be confined to the general facts, and not descend into particulars, as to how many hands would leave, nor should it extend to an estimate of depreciation in value, based upon a capitalization of pay rolls, which will, as alleged, be incurred by the evil effects of the right of way and the trains upon the employees and their families. This would enter too much into the forbidden domain of conjecture and speculation, even if considered only as bearing upon the question of depreciation alone, or as being an independent element for the assessment of damages. It would be impossible to do more than guess as to how many hands would quit the service, or to what extent the latter would be disorganized, and a definite opinion upon such matters, dealing with the actual figures in the final estimate, would be unsatisfactory, misleading, and dangerous as the basis for fixing the total amount of damage to the plant. Questions may be asked on cross-examination, for the purpose of testing the value of a witness's testimony, which are not permissible on examination in chief by the party calling him. To be sure, even on direct examination he may give the reasons for his opinion, provided those reasons are kept within proper and competent limits, as fixed by the established rules of evidence. An improper reason does not necessarily render the opinion of the witness incompetent, as the opinion may be valid and valuable without it, resting, as it may, upon other sufficient and admissible grounds. The party objecting to any of a witness's reasons which are deemed to be incompetent may ask that they be stricken out and that the jury be instructed not to consider them.

The jury, in finding the amount of depreciation in value of the plant by the location of the right of way and the operation of trains thereon, would naturally adopt neither the opinions of men who are sanguine in their estimate of value nor of those who are overcautious, but of prudent, conservative, and practical men who have knowledge and also have had experience and an opportunity of forming correct opinions and are influenced in their judgment only by careful thought and deliberation. *R. R. v. Dudley*, 22 N. J. L., 503. It is proper, therefore, that they should have the means of knowing the qualification of the witness to give an opinion worthy of their consideration—his intelligence, of course, and the extent of his knowledge and experience. The opinion of an

ignorant man would be of no value whatever. We need not say whether an "expert" or one having no knowledge of the facts—that is, the situation of the property, its surroundings, and other pertinent matters, but merely having had experience in the management or operation of cotton mills—should be allowed to express an opinion upon the question of value or depreciation, as the point is not presented, the witnesses who testified in this case appearing to have had knowledge of those facts. .

We are inclined to the opinion that some of those who testified as "experts," and perhaps some of the other witnesses, were allowed to go too much into detail and their testimony permitted to take too wide a range, by which the minds of the jurors may have been led astray by collateral and irrelevant matters; but the objections interposed to this class of testimony may be too general for notice. The incompetent parts of a mass of testimony, some of which is competent, should be clearly specified. *S. v. Ledford,* 133 N. C., 714; *Bank v. Chase,* 151 N. C., 108; *S. v. Stewart,* 156 N. C., 639; *Ricks v. Woodard,* 159 N. C., 647.

Our final conclusion is that, while the petition is disallowed, because there was error, the case will hereafter be tried in accordance with the principles stated in this opinion. The writer thought, when the case was here before, that the land was not the subject of condemnation at all, under our statute, and, therefore, his attention was not specially directed to the other questions we have discussed, and while he concurred in the result, he can well see now, after receiving more light upon the subject, that, because of the importance and intricacy of the questions, the reasons leading up to that result should be stated more fully and with closer reference to the facts, as they appear in the record, for future guidance in the case.

Petition dismissed.