# WELCH VS. THE MILWAUKEE AND ST. PAUL RAILWAY COMPANY.

(1, 2.) RAILROADS—COMPENSATION FOR LAND: *Measure of damages.— Road running over one of several city lots owned and used together by the same person.—Separation of lots so used, by highway.*

(3.) REVERSAL OF JUDGMENT: *When judgment not reversed for error.*

1. Damages for the taking of land by a railroad company must be estimated with reference to the purposes for which the land was acquired and used by the owner.

2. Plaintiff's land was within the limits of a city; had been laid out into lots which were acquired by him at different times, and those over which defendant's road ran were separated from his dwelling house by a highway; but all were used by him as one place for agricultural purposes. *Held,* that he was entitled to compensation for the injury to the *whole property,* and not merely for that to the separate lots over which the railroad was built.

3. Where it is manifest that no injury resulted to appellant from the erroneous admission of evidence, the judgment will not be reversed on that account.

APPEAL from the Circuit Court for *Dane* County.

The defendant appealed from a judgment in favor of the plaintiff. The question presented by the record will sufficiently appear from the opinion.

*Hopkins & Foote* and *George B. Smith,* for appellant.

*Welsh & Botkin* (with *Wm. F. Vilas,* of counsel), for respondent.

DIXON, C. J. This was an appeal to the circuit court of Dane county from the appraisement of commissioners appointed under the charter of the railway company to assess the damages sustained by the plaintiff by reason of the taking of certain lands of his by the company for right of way. In the circuit court there was a verdict and judgment for the plaintiff, from which the company appeals. The facts of the case, upon which the questions of law arise, are thus succinctly stated in the brief of the learned counsel for the company: The plaintiff was the owner

of certain lots in the city of Madison, upon which he resided. He was also the owner of certain other lots, in another block across the street from his residence, through which the railroad runs, and upon which it became necessary to raise an embankment some eight or nine feet high, by which he was without a road over or under the track, and was greatly impeded in the use of the land which lay the other side of the track and embankment. The lots across which the railroad ran were four in number, containing about eleven acres, and worth, according to the testimony of the plaintiff, from $200 to $250 per acre—according to the testimony of others, much less. The lots where the plaintiff lived, on the other side of the street in another block, are six in number, and contain about nine acres of land. The company objected to any evidence showing the value of the property across the street where the plaintiff resided; but the court overruled the objection, and allowed evidence as to the value of the plaintiff's home place, together with the value of the lots across which the railroad ran. And the court refused to allow the company to prove the value of the land actually taken for the road.

The company requested the court to charge the jury as follows: "The land taken being across lots deeded and laid out in the city, and separated from the other lots of the plaintiff by a street, so that they do not adjoin his other property and lots, the defendants are not liable for any supposed damages that the plaintiff may sustain to his other lots or property thus situated, by reason of taking and using the strip across the lots through which the railroad passes."

This instruction was refused, and in place thereof the following, as part of the general charge, was given:

"I have charged you, as requested by defendant's counsel, that lots in a city are not generally supposed or intended to be used for agricultural purposes; nor

is the value usually determined by such rule—their value being generally estimated and established according to their eligibility for business or building purposes. But it is not necessarily so in reference to all land included in the city limits of a city of ten or twelve thousand inhabitants, as large in territorial extent, perhaps, as some of the largest cities in the country. A party may use, in connection with his residence, a number of acres. Persons very frequently do so within the city limits of the largest cities; but when land lying in a body is so used in connection with a residence, it is not two distinct tracts, even if a highway pass through it, no more than a farm having a highway passing through it is two farms; nor, because it may consist of more than one lot, and have been purchased by the owner and resident upon it, at different times and in different parcels—especially when, as in this case, as General Mills and all the witnesses testifying on the point, as I remember the evidence, say, the part below the road was worth more as part of the place, than it would have been separate."

Such are the facts, and such the propositions of law involved, as stated in the brief of counsel, which is quite sufficient, save only as to the additional facts, which are rather assumed than stated, because there was no controversy with respect to them, that the lots of the plaintiff are situate on the confines of the city, where the residences are not numerous, and where the land, or nearly all of it, like that of the plaintiff, is entirely devoted to the purposes of agriculture. It is proper likewise to observe, what appears from the plat or map given in evidence, that the lots as laid out seem designed quite as much, if not more, for the purpose of tillage and cultivation than for any other. They are lots of the kind designated in the legislation of this state as "out lots," and distinguished from "in lots," which are only those properly intended for city or village residences and for business, by being

Welch vs. The Milwaukee and St. Paul Railway Company.

very much larger, and usually so planned or laid out with reference to streets and other accommodations as to be incapable of convenient use or occupation by more than a single resident, by whom the greater part must be employed for agriculture, or otherwise put to no valuable use at all. Such are the lots in question, each one of which is from twelve to fifteen times larger than the " in lots," or residence and business lots proper. They are property of a mixed nature, but more agricultural than anything else. They were intended to be chiefly used in husbandry, and for the raising of crops on a small scale—as a kind of suburban farming lands, not uncommon on the borders of our large towns and villages.

These considerations, in connection with the use which was actually made of the lots by the plaintiff, seem to go very far towards verifying the correctness of the rules laid down by the learned judge of the court below for the guidance of the jury, and to show that the method adopted for estimating the damages sustained by the plaintiff was the proper one. The objection to that method is, that the property is city lots, and not designed for agriculture, and that in determing the damages, the injury to each lot should be considered by itself, and with reference to any separate use which might be made of it, or at all events, that the injury or depreciation in value of the property of the same owner upon the opposite side of the street cannot be taken into the account. The effort is to disconnect these several lots and the use which was made of them by one owner, as a single tract or parcel of land for the purposes of agriculture, and to treat them as so many distinct lots owned by different persons, or as if those on one side of the street, over which the railroad runs, were owned by one man, and those on the other side by another. The injustice of such a rule, were it the rule prescribed by law, as applied to the present plaintiff's case, is mani-

fest from the testimony taken on the trial, to which allusion was made by the judge in his charge. All the witnesses concurred in saying that the injury to the plaintiff was greater than if he had owned and cultivated only the lots across which the road passed; that the benefits of which he has been deprived, or the loss which he has sustained, are very considerably enhanced by reason of the use which he made and intended to make of the land in question in connection with that across the street where his dwelling house and other buildings are located. The inquiry, therefore, is, whether the plaintiff is to be deprived of these benefits and suffer this loss which the jury have found, without compensation, merely because the lands which he thus owned and occupied for agricultural purposes, and which in reality constituted but one body or tract divided only by the street in which the public had a mere easement, happened to be laid out into lots and blocks, a circumstance which did not at all interfere with or prevent the beneficial use and enjoyment by the plaintiff in the manner stated. In other words, the question is, whether we are to look to the map to ascertain the plaintiff's damages, or to the land itself, and the actual situation of it, and the use to which it was applied and intended to be by the plaintiff. It seems to us that the latter constitutes the true ground or basis for estimating the damages. The division of the property into lots and blocks upon the map, and the appropriation of a portion of it for a street, were, so far as the plaintiff is concerned, and his use and the injuries he has sustained, purely accidental circumstances. They did not obstruct the use nor mitigate the injuries. It appears from the printed case that the plaintiff acquired the property for the use to which it was applied, and in consideration of its value and the advantages to himself as owner of the adjoining property across the street where he resided. He acquired it after it was laid out into lots,

and at different times, and probably from different owners of distinct lots. The fact that he thus purchased the lots, and the purposes for which he purchased and used them, seem to us to bear very strongly on the question under consideration. It was, as we have seen, no diversion of them to a use not intended by the proprietor who made and acknowledged the plot, even supposing that could have made any difference. It was, as suggested in the charge of the judge, no more than if a farm in the country were intersected by a highway, or than if it were composed of ten contiguous forty-acre tracts of land, that being the smallest government subdivision, and the railroad should cross one or more of them, or (to make the case exactly parallel) four of them, and it should be insisted that the damages be assessed with reference to the injury to those four alone, and without considering any loss actually sustained by the owner in consequence of being deprived of their use in connection with the others. We venture to say that the rule contended for here would hardly be urged in such a case ; and yet the difference between the cases is not appreciable to our minds. If it cannot be said that a farmer in the country has no right to acquire ten forty-acre tracts of land, one at a time though it may be, and appropriate them to use as one farm, and claim damages for the injury to the whole, then we do not see how it can be said to have been incompetent for the plaintiff to have acquired title to the lots in question and appropriated them to use in the manner shown, and to claim compensation for the injury to his property as a whole. There exists, in our judgment, no sound basis for a distinction ; and we must accordingly hold that the learned judge of the circuit court was right in rejecting the instruction asked for the company, and in giving that to which exception was taken.

The damages is such cases must always very much depend upon the use to which the property is appro-

priated, and its situation and value with reference to other property of the same owner with which it is connected in use; and that rule of assessment or valuation would seem to be the only true one which makes compensation go hand in hand with the actual loss or injury sustained by the person whose land is thus taken. People may do what they will with their own. This is the essential idea of property. And whilst speculative damages cannot be allowed, yet actual damages— its value to the owner, his use being considered, must always be. And in such case it will not do to say, if the land was separately owned, or separately used, or intended for some other purpose, or belonged to some one else, the damage would be so much the less, and therefore no more can be recovered. The actual use and intention of the proprietor, together with all surrounding circumstances, must be considered. If, for example, it had appeared in the present case that the plaintiff acquired the lots for some different object, as to sell again, not using nor intending to use them in connection with the land on the other side of the street where he resides, as together constituting a single tract or parcel of land for agricultural purposes, or if it had appeared that he owned the land originally, and had laid it out into lots, holding them for sale, then a different rule of damages might have prevailed. As it is, however, we are quite satisfied, for the reasons thus imperfectly stated, that the rule held by the court below was the correct one, and that the verdict and judgment ought not to be disturbed.

Objection is also taken in the brief of counsel for the company, that the plaintiff was allowed to give evidence of the separate value of the four lots across which the railroad runs, and that the company was not allowed to refute that evidence or give any proof on the subject. It appears from the bill of exceptions that the plaintiff, when first called to the stand as a witness, testified to the value per acre of the four lots

in question.   This was, of course, without objection on the part of the company, as it was with reference to the value or injury of those lots alone that the company insisted the damages should be estimated.   Immediately upon the question being raised and discussed whether the rule should be the damages to the property of the plaintiff as a whole, the court decided that it should, and as we hold correctly, and thereafter the testimony was directed and limited to the issue thus presented, and all evidence of the separate value of the four lots excluded.   It is manifest from the entire evidence, as well as from the position taken and attempted to be maintained for the company, that no injury resulted to the company from the admission of the testimony, or from the refusal to allow the company to rebut it.   The damages were not increased by reason of it, or the verdict for a greater sum than it would otherwise have been.   In fact, the course of subsequent investigation was such, that this testimony was entirely lost sight of.   It was neither considered by the court nor the jury, and could have had no influence upon the verdict.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.*—It is so ordered.

PAINE, J., did not sit in this case.