CITY OF WINSTON-SALEM v. KATIE S. ZIGLAR TICKLE (WIDOW), JAMES N. ZIGLAR, JR., AND WIFE, BARBARA C. ZIGLAR

No. 8121SC55

(Filed 1 September 1981)

1. **Eminent Domain § 5.1, 6.7— farm broken up into parcels—parcel taken for landfill—unity of lands**

    In a proceeding to condemn a portion of defendants' land for use as a landfill where defendants contended that the acres taken by plaintiff were merely a portion of the farm of defendants, but plaintiff contended that the tract taken was neither related to nor connected with any of the other land in any meaningful sense, evidence was sufficient for the trial court to find that, with the exception of a parcel of land on which apartments were built, all of the property was being used together as a family farm, and use of the parcels for different activities, including residences, grazing land, and haying, was not incompatible with use of the whole tract as a family cattle farm.

2. **Eminent Domain § 5.1— farm broken into parcels—physical unity**

    In a proceeding to condemn a portion of defendants' land for use as a landfill where defendants contended that the acres taken by plaintiff were merely a portion of their farm while plaintiff contended that the tract taken was neither related to nor connected with any of the other land in a meaningful sense, evidence was sufficient to establish the physical unity of the parcels, with the exception of a parcel used for an apartment building, and the physical unity was not destroyed by the fact that all of the parcels were physically separated from the property taken and from each other by one or two roads, railroad tracks, and natural boundaries, since, if a tract of land, no part of

which is taken, is used in connection with the same farm, part of which is taken, it is not considered a separate and independent parcel even if the two tracts are separated by a highway, railroad, or other boundaries; physical unity requires only that the parcel taken and the parcels sought to be included be contiguous with the whole of the land similarly used; and a single unbroken line could be drawn along the boundary of defendants' farm so that no truly separate parcel need be included.

**3. Eminent Domain § 5.1— part of property taken for landfill—unity of ownership**

There was substantial unity of ownership in the entire 156 acre farm of defendants, a portion of which plaintiff sought to condemn for a landfill, where one defendant held a vested remainder in fee simple in the parcel taken while another defendant was the life tenant of that parcel; all defendants held other parcels in fee simple; and, in determining unity of ownership, the significant factor is that the party who owns an interest and estate in the parcel he seeks to include in the whole for purposes of computing damages must also own an interest and estate in the tract taken, although the two interests and estates need not be of the same quality or quantity.

APPEAL by plaintiff from *Collier, Judge.* Order entered 29 September 1980 in Superior Court, FORSYTH County. Heard in the Court of Appeals 5 June 1981.

Plaintiff's condemnation of a portion of defendants' land for use as a landfill was initiated under the "quick-take" provision of Article 9 of G.S. Ch. 136, as authorized by 1965 N.C. Sess. Laws, Ch. 895. Upon motion of defendants under G.S. 136-108, a hearing was held to determine whether damages should be determined under G.S. 136-112(1) for a partial taking or under G.S. 136-112(2) for a total taking. Defendants contended that the 42.657 acres taken by plaintiff were merely a portion of the 156.91-acre farm of defendants. Plaintiff contended that the tract taken was neither related to nor connected with any of the other land in any meaningful sense, and argued that damages should be assessed without regard to the remainder of defendants' farm.

The material facts were not in dispute. The parties entered into numerous stipulations of fact which will be incorporated into the description of each individual tract. Dr. James N. Ziglar, Jr. was the only witness to testify at the hearing. To simplify the description of defendants' lands, reference will be made to the map designated in the record as the Court's Exhibit 1 (see p. 518). We will adhere to the labeling of the various parcels employed by plaintiff in its brief.

City of Winston-Salem v. Tickle

The land involved in the suit is located north of Winston-Salem along U.S. Highway 52. A single, continuous line can be drawn around the border of the entire 156 acres. Within this border run three rights-of-way. Ziglar Road, a two-lane public road, cuts through the center of the boundary in an east-west direction. The Southern Railroad runs through the property in a north-south direction near the western boundary of all but the northwest corner of the land. U.S. Highway 52 cuts through the boundary in a northwest to southeast swath, carving off a small portion of the northeastern corner of the property. A creek runs along the western boundary south of Ziglar Road and forks a short distance north of the road sending its two branches meandering through the northwest section of the property. A small creek runs east-west through the property and forms the northern boundary of the tract taken by the city.

The entire property, with exceptions noted hereafter, was held in fee by the late James Ziglar, Sr. until his death in 1958. Ziglar, Sr. farmed the land as had his forebears. When Ziglar, Sr. died, he devised his land to his widow, Katie S. Ziglar (later Tickle) for life, remainder in fee to his only son, James N. Ziglar, Jr. Ziglar, Jr. is a dentist who has operated a cattle farm on the property since the early 1960's.

Parcel A is the land taken. Before the taking it was owned by Katie S. Ziglar Tickle, life tenant; James N. Ziglar, Jr., vested remainderman; and Barbara C. Ziglar, who held a statutory interest in her husband's remainder. At the time of the taking the land was about half woodland and the other half was open pastureland used in conjunction with the cattle farming operation run by Ziglar. Some of that open land had been seeded in fescue grass and cultivated to maximize its utility for grazing purposes; some was then in the process of being so improved.

Parcel B is a 2.06-acre tract which includes the residence of James N. Ziglar, Jr., occupied by him and his wife and children. The tract was owned in the same manner as Parcel A until 1976 when it was deeded to James N. Ziglar, Jr., and wife, Barbara C. Ziglar as tenants by the entirety to be used as their home site. A good portion of this two-acre tract is in pasture and is used for grazing purposes along with the surrounding Parcel C. The portion of Parcel B upon which the house sits is fenced off from the cattle and used for residential purposes only.

Parcel C surrounds Parcel B on three sides. It is owned in the same manner as Parcel A. The southern border of Parcel C is the nothern border of Parcel A. The old Ziglar homeplace, in which Mrs. Tickle resides, is located on Parcel C. Also on Parcel C is a barn and several sheds used in conjunction with the farming operation. Much of the Parcel is open pastureland.

Parcel D is a wooded tract containing 9.24 acres. It is owned in the same manner as Parcel A. It contains a four-unit apartment building and appears not to be used in conjunction with the farming operation.

Parcels E1, E2, E3, and E4 will be referred to collectively as Parcel E. This Parcel is the only portion of land in this case which was not part of the holdings of James N. Ziglar, Sr. in 1905. Parcel E was acquired by Ziglar, Sr. and his wife, Mrs. Tickle, as tenants by the entirety in 1945. When Ziglar, Sr. died in 1958, the property passed outside his will to Mrs. Tickle as surviving spouse. Some of this Parcel is still in the process of being cleared of its pulpwood so that it can be cultivated as grassland. Cattle have been allowed to graze in Parcel E, but more recently the cattle have been kept out of Parcels E2, E3, and E4 and hay has been gathered therefrom. Parcel E1 is used part of the time for grazing and part of the time for haying.

Parcels F1 and F2 are held in the same manner as Parcel A. They are in the process of being harvested for their pulpwood, cleared, and then cultivated as grasslands. With the exception of the little triangle of land in Parcel F1 which is east of the creek and west of the railroad track (the extreme southeast corner of F1), Parcel F2 is farther along than is Parcel F1 in this clearing and cultivation process. There was no evidence that cattle had ever actually grazed in either parcel.

Parcel F3 is an open field owned in the same manner as Parcel A. It has been used consistently for the past ten years as a hayfield. The hay is cut from this field twice a year and used to feed the cattle.

Parcel F4 is owned in the same manner as Parcel A. There is a small wooded area in this tract. The tract is used primarily as grassland. It is grazed about two months out of the year, and is used the rest of the time for haying.

Parcel F5 is more pastureland, owned in the same manner and sharing a border with Parcel A.

The trial court went to the farm and viewed the site. He thereupon ordered that the entire 156 acres be considered a unified tract and that damages be determined under G.S. 136-112(1) for a partial taking.

*Womble, Carlyle, Sandridge & Rice by Roddey M. Ligon, Jr.; and City Attorneys Ronald G. Seeber and Ralph D. Karpinos for plaintiff appellant.*

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready by Dudley Humphrey, F. Joseph Treacy, Jr. and Gray Robinson for defendant appellee.*

CLARK, Judge.

The issue in this case is which of the two measures of damages allowed in G.S. 136-112 should be applied in fixing compensation for the taking of Parcel A. The statute provides:

"The following shall be the measure of damages to be followed by the commissioners, jury or judge who determines the issue of damages:

(1) Where only a part of a tract is taken, the measure of damages for said taking shall be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking, with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes.

(2) Where the entire tract is taken the measure of damages for said taking shall be the fair market value of the property at the time of taking."

*Id.*

In a case involving a landfill, which would not be expected to benefit surrounding property, it would be to the landowner's advantage to have damages assessed under G.S. 136-112(1) in order to include the diminution in value to surrounding land in the com-

putation of damages in addition to the value of the land actually taken. The issue for the trial court was whether any or all of the previously described parcels constituted a single unified tract for purposes of assessing damages. Plaintiff assigns error to the court's ruling that the 156 acres constituted a single, unified family farm at the time of the taking.

## THE TEST FOR UNITY OF LANDS

The principles which must guide our decision in this case are discussed fully in the decision of *Barnes v. Highway Commission*, 250 N.C. 378, 109 S.E. 2d 219 (1959) (Moore, J.):

> "There is no single rule or principle established for determining the unity of lands for the purpose of awarding damages or offsetting benefits in eminent domain cases. The factors most generally emphasized are unity of ownership, physical unity and unity of use. Under certain circumstances the presence of all these unities is not essential. The respective importance of these factors depends upon the factual situations in individual cases. Usually unity of use is given greatest emphasis.

> The parcels claimed as a single tract must be owned by the same party or parties. It is not a requisite for unity of ownership that a party have the same quantity or quality of interest or estate in all parts of the tract. But where there are tenants in common, one or more of the tenants must own some interest and estate in the entire tract. *Tyson v. Highway Commission*, 249 N.C. 732, 107 S.E. 2d 630. Under some circumstances the fact that the land is acquired in a single transaction will strengthen the claim of unity. But the fact that the land was acquired in small parcels at different times does not necessarily render the parcels separate and independent. However, there must be a substantial unity of ownership. Different owners of adjoining parcels may not unite them as one tract, nor may an owner of one tract unite with his land adjoining tracts of other owners for the purpose of showing thereby greater damages. *Light Co. v. Moss*, 220 N.C. 200, 207, 17 S.E. 2d 10.

> The general rule is that parcels of land must be contiguous in order to constitute them a single tract for

severance damages and benefits. But in exceptional cases, where there is an indivisible unity of use, owners have been permitted to include parcels in condemnation proceedings that are physically separate and to treat them as a unit. It is generally held that parcels of land separated by an established city street, in use by the public, are separate and independent as a matter of law. *Todd v. Railroad Co.*, 78 Ill. 530 (1875); *Wellington v. Railroad Co.* (Mass. 1895), 41 N.E. 652. 'When land is unoccupied and so not devoted to use of any character, and especially when it is held for purposes of sale in building lots, a physical division by wrought roads and streets creates independent parcels as a matter of law . . . (but) If the whole estate is practically one, the intervention of a public highway legally laid out but not visible on the surface of the ground is not conclusive that the estate is separated.' Nichols on Eminent Domain (3rd Edition), sec. 14.31(1), Vol. 4, pp. 437-8. Lots separated by a public alley but in a common enclosure have been held to be a single property. Mere paper division, lot or property lines, and undeveloped streets and alleys are not sufficient alone to destroy the unity of land. 'If the owner's land is merely crossed by the easement of another, the fee remaining in him, and the sections so made are not actually devoted, as so divided, to wholly different uses, they are to be considered actually contiguous and so as a single parcel or tract.' 6 A.L.R. 2d 1200, sec. 2.

As indicated above, the factor most often applied and controlling in determining whether land is a single tract is unity of use. Regardless of contiguity and unity of ownership, ordinarily lands will not be considered a single tract unless there is unity of use. It has been said that 'there must be such a connection or relation of adaptation, convenience, and actual and permanent use, as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used.' *Peck v. Railway Co.* (1887), 36 Minn. 343, 31 N.W. 217. The unifying use must be a *present* use. A mere intended use cannot be given effect. If the uses of two or more sections of land are different and inconsistent, no claim of unity can be main-

tained. But the mere possibility of adaptibility to different uses will not render segments of land separate and independent. If a map of a proposed subdivision is made and the lots shown thereon are actually a compact body of land, used and occupied as an entirety, they are to be treated as one tract notwithstanding the division into imaginary lots. It has been held that where suburban lots acquired under separate titles are divided by an established highway, they will be considered as one tract where the owner uses them together for tillage and cultivation in connection with his residence on one of them. *Welch v. Railway Co.* (1890), 27 Wis. 108. '. . . (I)f a tract of land, no part of which is taken, is used in connection with the same farm, or the same manufacturing establishment, or the same enterprise of any other character as the tract, part of which was taken, it is not considered a separate and independent parcel merely because it was bought at a different time, and separated by an imaginary line, or even if the two tracts are separated by a highway, railroad, or canal.' 18 Am. Jur., Eminent Domain, sec. 270, p. 910.

For a full discussion, exhaustive annotation and citations of authority with respect to the principles of law set out in the four preceding paragraphs, see 6 A.L.R. 2d 1200-1214, and Nichols on Eminent Domain (3rd Edition), sections 14.3, 14.31 and 14.4, Vol. 4, pp. 426-445."

*Id.* at 384-86, 109 S.E. 2d at 224-26.

### UNITY OF USE

[1] Since *Barnes* characterizes use as the most important of the factors to be considered in determining the unity of lands, we first consider the use to which the 156 acres were being put at the time of the taking. The record reveals that all of the property, except for Parcel D, was being used together as a family farm. Plaintiff argues that the parcels were being devoted to at least five separate uses: "A portion was used for raising cattle and hay, a portion was used for the single-family residence of Dr. Ziglar and his wife, a portion was used as the single-family original farm residence of Mrs. Tickle, a portion was used as multi-family rental property and a wood lot, and a portion was not being used for any present purpose." Our examination of the record and exhibits in this case satisfies us that with a single exception the property

was devoted to the single use of cattle farming. The fact that all of the land was not cleared does not indicate to us that it was not farmland. Dr. Ziglar's testimony made it clear that somewhere in every parcel (except Parcel D) some aspect of the farm operation was being carried out. True, not every parcel was presently being used as grazing land. Some was being cultivated to produce hay to eventually feed to the cattle. Some was being cleared of its pulpwood or being seeded so that grass could be produced thereon for grazing or haying. Portions of some of the parcels had not yet been cleared at all, but Dr. Ziglar's testimony made it clear that the work of developing the land was an ongoing process already in progress when Parcel A was taken. The only portions of the property not in grassland (or in the process of being transformed into grassland) were the portions devoted to his residence, his mother's residence, the apartment house lot, the portions of certain tracts which he had not yet had opportunity to clear, and areas that were not "level enough to negotiate." We hold that all these uses (with the exception of the apartment house) are consistent with land devoted to the operation of a family cattle farm, and note in passing that it would be difficult indeed to find a farm in North Carolina which did not encompass at least some wooded area.

The use of part of two of the tracts (Parcels B and C) for residential purposes is not incompatible with the use of the whole tract as a family farm. The evidence was that much of both of these tracts was used for grazing and that only the immediate yard is fenced to keep the cattle out. The residences are both occupied by family members. Ziglar is the farmer. It would be absurd to say that the house in which the farmer lives is not devoted to farm use unless there are cattle in the yard and hay stored in the living room. Mrs. Tickle, as the life tenant, is entitled to the rents and profits from the farm and has immediately behind her house barns and sheds used in the farming operation. Her living on the land cannot be said to deprive it of its essential character as farmland. Rather than belying defendants' claims, as plaintiff suggests, we believe the presence of three generations of the same family on the same land that has been farmed by that family for the past seventy-five years is a strong indication that the property continues to be used as a family farm. .

Plaintiff argues at length about the differences in zoning in various portions of the property. We believe this argument is without merit in that it ʹdisregards the clear mandate of the *Barnes* court that, "The unifying use must be a *present* use. . . . [T]he mere possibility of adaptability to different uses will not render segments of land separate and independent." *Barnes v. Highway Commission*, 250 N.C. at 385, 109 S.E. 2d at 225. We must follow the *Barnes* court in pointing out that "[t]he contention of appellants with respect to zoning takes into consideration possible future use and ought not to be regarded on this point under pertinent rules of law." *Id.* at 386, 109 S.E. 2d at 226.

Parcel D, containing an apartment house and undeveloped woodland, does not appear to have been used for any farming purpose. Dr. Ziglar testified that for as long as he could remember tenants had lived on that parcel and helped farm the land. Whether a dwelling for tenant farmers would constitute a farm-related use for this property we need not decide. It is the present use with which we are concerned. The parcel is presently being used to support a multi-family dwelling unrelated to the farming operation. No portion of the parcel is cleared or being cleared. We hold that the use to which defendants are putting Parcel D is unrelated to the operation of the family farm.

On the question of use, we hold that with the exception of Parcel D, there was sufficient evidence before the trial court to support a finding of " 'such a connection or relation of adaptation, convenience, and actual and permanent use, as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used.' " *Barnes v. Highway Commission*, 250 N.C. at 385, 109 S.E. 2d at 225.

## PHYSICAL UNITY

[2] The unity of use alone, however, does not establish the unity of the parcels sufficiently to support the trial court's order. Another factor to be considered is the physical unity of the parcels. Plaintiff asserts that all of the parcels were physically separated from the property taken and from each other by one or two roads, by railroad tracks, by property in different ownership and use, and by natural boundaries. At least with regard to the farmland of defendants, we must reject this argument as incon-

sistent with the facts of the *Barnes* case, wherein three parcels of land were treated as one unit despite the fact that a creek, a public street, and a private easement ran through the property. As noted in *Barnes*, although the general rule is that "parcels of land separated by an established city street, in use by the public, are separate and independent as a matter of law," *id.* at 385, 109 S.E. 2d at 225, there is an exception to this rule. " '[I]f a tract of land, no part of which is taken, is used in connection with the same farm, . . . part of which was taken, it is not considered a separate and independent parcel . . . even if the two tracts are separated by a highway, railroad, or canal.' " 250 N.C. at 386, 109 S.E. 2d at 226. This is precisely the case before us.

Plaintiff seems to argue that each parcel must be physically contiguous to the parcel taken to support a finding of physical unity. We do not believe this is a reasonable approach to the physical unity requirement. We believe, rather, that physical unity requires only that the parcel taken and the parcel sought to be included be contiguous with the whole of the land similarly used; thus, Parcel F1, although not contiguous with Parcel A, satisfies the contiguity requirement because it is contiguous with other land used in the farming operation and is separated from Parcel A only by portions of the same farm. Moreover, the *Barnes* court noted that contiguity requirements may be relaxed "where there is an indivisible unity of use," 250 N.C. at 385, 109 S.E. 2d at 225, permitting owners "to include parcels in condemnation proceedings that are physically separate and to treat them as a unit." *Id.* In the case *sub judice* we note that a single unbroken line can be drawn along the boundary of the farm so that no truly separate parcel need be included.

Parcel D we must treat differently from the farm parcels. This parcel is separated from the remainder of defendants' lands by Ziglar Road on the south, and by U.S. Highway 52 as well as property not owned by defendants on the west. Since Parcel D is not used for farming, it does not fall under the "same use" exception stated *supra*, and must be held to be "separate and independent as a matter of law" as required by the general rule stated *supra*.

We hold that, with the exception of Parcel D, all the parcels are sufficiently contiguous with the farm as a whole to support a finding of physical unity.

UNITY OF OWNERSHIP

[3] The final factor to be considered is the unity of ownership. There is no issue as to ownership with regard to most of defendants' land. All of defendants' lands are held in the identical manner as was the parcel taken with the exception of Parcel B (Dr. and Mrs. Ziglar's homesite) and Parcel E (consisting of Parcels E1, E2, E3, and E4). Only these two parcels, then, need be scrutinized to determine whether the unity of ownership exists as to them as well. The *Barnes* decision explains the ownership requirement as follows: "It is not a requisite for unity of ownership that a party have the same quantity or quality of interest or estate in all parts of the tract. But where there are tenants in common, one or more of the tenants must own some interest and estate in the entire tract. . . . [T]here must be a substantial unity of ownership." *Id.* at 384, 109 S.E. 2d at 225. The test of substantial unity of ownership appears, then, to be whether some one of the tenants in the land taken owns some quantity and quality of interest and estate in all of the land sought to be treated as a unified tract.

We note first, that we view the reference in *Barnes* to tenants-in-common as no more than an example of a situation in which more than one person owns an interest and estate in land. It seems improbable that the court meant to limit its statement to the case of tenancies in common to the exclusion of other forms of ownership where more than one person holds an interest and estate in property. We see no reason to apply a different rule to a joint tenancy, to a tenancy by the entirety, or, as in the instant case, to a life tenancy followed by a vested remainder in fee. In each of these cases, as in the case of a tenancy in common, the significant factor is that the party who owns an interest and estate in the parcel he seeks to include in the whole for purposes of computing damages must also own an interest and estate in the tract taken, although the two interests and estates need not be of the same quality or quantity.

Dr. Ziglar held a vested remainder in fee simple in Parcel A. This is a future interest. It is an estate because it is "an interest in land that is or may become possessory." J. Webster, Real Estate Law in North Carolina § 23 (1971); *see also* Restatement of the Law of Property § 9 (1936). Dr. Ziglar holds Parcel B as a ten-

ant by the entirety in fee simple. The only distinction between the two interests and estates is in quality and quantity, which is not a requisite of unity of ownership. *See Barnes v. Highway Commission, supra.* We hold that there was sufficient evidence upon which to base a finding of substantial unity between the ownership of the tract taken and the ownership of Parcel B upon which Dr. Ziglar resides.

Mrs. Tickle was the life tenant of the parcel taken. As such she held a present possessory freehold estate. She holds Parcel E in fee simple. Again one of the owners of the parcel taken holds an interest and estate in the parcel sought to be included in the whole for purposes of computing damages. The only distinction between her two interests and estates being in quality and quantity, it was not error for the trial court to find Parcel E to be substantially unified in ownership with the parcel taken.

Our holding that there was substantial unity of ownership in the entire 156-acre tract makes it unnecessary for us to seek to reconcile *Barnes v. Highway Commission, supra,* which regards unity of ownership as only one factor to be considered when determining the larger issue of unity of lands, with *Board of Transportation v. Martin,* 296 N.C. 20, 249 S.E. 2d 390 (1978), which treats unity of ownership as an absolute prerequisite without which unity of lands may not be found. We believe it is necessary, however, to comment on one of our own cases which plaintiff cites for the proposition that land owned individually cannot be treated as unified with land owned in common with another. In that case, *Highway Commission v. Cape,* 49 N.C. App. 137, 270 S.E. 2d 555 (1980), we did not so hold. Such a holding would have been contrary to the law of the State as expounded by our Supreme Court. *Tyson v. Highway Commission,* 249 N.C. 732, 107 S.E. 2d 630 (1959). The *Cape* case dealt with a condemnation proceeding brought against two defendants as tenants-in-common. One of the defendants showed that part of the land was owned by him alone and prayed that the action be severed into two separate lawsuits *because of the lack of unity* of ownership. The State did not seek to unite the lands, but *conceded the lack of unity by instituting a second condemnation proceeding* against defendant individually for that portion of the taking which he held individually. The cases were consolidated for trial and were tried as if there had been a single taking. Our holding was that

where two cases concern distinct tracts of land the distinction must be preserved throughout the trial and the judgment must contain a separate award of compensation in each of the two cases. The case is distinguishable in that in that case neither party wished to treat the two tracts as a unit, no one claimed that there was any unity of ownership, and this court did not have before it a contested judicial determination of such unity. Further, our concern in that case was with the differing ownership interests in the property taken, not as in the instant case with the differing ownership interests in the property remaining after the taking. We believe plaintiff's reliance on the *Cape* case to be misplaced.

### UNITY OF LANDS

The ultimate determination for the trial court, and for our review, is not any of the three unities discussed above, but the larger question of unity of lands. *See* Barnes, 250 N.C. at 384, 109 S.E. 2d at 224. This determination must be based upon due consideration of all three of the foregoing factors, greatest emphasis being given to the unity of use. *Id.* Our examination of the three unity criteria as they relate to the facts of the case *sub judice* reveal that all three unities exist with regard to 147.67 acres of defendants' 156.91-acre property. Parcel D, being subjected to a use unrelated to operation of the family's cattle farm, and separated physically from the tract taken, may not reasonably be regarded as part of the unified farm. The order of the trial court is affirmed except for the vacation of that part thereof which included the 9.24-acre Parcel D as a portion of the unified tract to be considered in assessing damages under G.S. 136-112(1).

Affirmed in part; vacated in part.

Judges MARTIN (Robert M.) and HILL concur.