## CIRCUIT COURT OF ALBEMARLE COUNTY

Brian Scruby

v.

Zoning Appeals Board
of Albemarle County

June 1, 2004

Case No. (Law) CL04-9725.00

BY JUDGE PAUL M. PEATROSS, JR.

This matter is before the Court on the writ of certiorari issued on March 31, 2004, in this Court under Virginia Code § 15.2-2314 on the question of whether a parcel of land owned by Brian Scruby can now be considered as two separate parcels, thus having two different sets of development rights, when the state physically divided the parcel in half after an eminent domain acquisition of 13.93 acres for a right-of-way for Interstate 64.

*Statement of Facts*

Petitioner currently owns 43.51 acres of property, known as Parcel 14, which is used as a cattle farm. This parcel was created in 1907 when it contained 57 and 50/160 acres, and the parcel has remained in Petitioner's family since the 1830s. In 1967, the State Highway Commissioner acquired 13.93 acres for Interstate 64, which now physically divides Parcel 14. The original parcel is still described and recorded by the 1907 deed, and a certificate is also recorded which relates to the State Highway Commissioner's acquisition of the 13.93 acres for the right-of-way. The certificate does reference road maps that portray the original property lines of Parcel 14, but the maps do not create new property lines along the right-of-way or provide legal descriptions of two pieces of Parcel 14. Furthermore, Parcel 14 has been taxed as a single parcel since 1907, and the County's tax maps correspond with that assessment.

Parcel 14 is controlled by Zoning Ordinance § 10.3 because it is zoned under Rural Areas (RA). Section 10.3 establishes that up to five development rights attach to all "parcels of record" within the RA zoning district existing "at 5:15 p.m., the tenth day of December, 1980." A development right is a right to create a parcel less than 21 acres in size in the RA zoning district, while a parcel of 21 acres or larger may be created without a development right. *Zoning Ordinance* § 10.3.1.

On January 20, 2004, the Zoning Administrator of Albemarle County, in reference to a request by Petitioner under the county's Acquisition of Conservation Easements program, determined that Parcel 14, as of December 10, 1980, was a single "parcel of record" with five development rights, as opposed to two parcels with a total of ten development rights. The administrator found, using the definition of "lot of record," that in order to be considered a "parcel of record," Parcel 14 had to have more than mere physical separation by Interstate 64, thus requiring legal separation by a plat, deed, or other legally descriptive document lawfully recorded in the Clerk's Office of the Circuit Court of Albemarle County.

Petitioner appealed this ruling to the Board of Zoning Appeals of Albemarle County (BZA) pursuant to Virginia Code § 15.2-2311 and Albemarle County Code § 18-34.3. On March 2, 2004, the BZA affirmed the Zoning Administrator's ruling in asserting that "the physical separation of the property by Interstate 64 did not legally separate the property into two parcels of record" because two parcels would have had to be "established by a recorded plat or deed before that time and date [December 10, 1980] in order to be recognized as a parcel of record."

Petitioner contends that the practice of the Zoning Administrator applied during the years 1990 to 2001, which was to determine that parcels physically separated by a public road were separate parcels of record under Zoning Ordinance § 10.3, should be reinstated as the correct practice. Respondent asserts that, after the ruling in *County of Chesterfield v. Stigall*, 262 Va. 697, 554 S.E.2d 49 (2001), this former practice is no longer a correct application of law and that the current practice of requiring legal separation, accomplished solely by recording a plat, deed, or legal document, should be upheld.

*Questions Presented*

The questions the Court must address are:

(1) Does the *Stigall* case effectively overrule the *Tickle* rule as adopted by the Albemarle County Circuit Court's 1990 decision in *Sanford v. Board of Zoning Appeals of Albemarle County*?

(2) If so, is the Zoning Administrator's policy consistent with *Stigall*?

### Discussion of Authority

*County of Chesterfield v. Stigall* concerned a taxpayer's challenge to the county's assessment of roll-back taxes when a parcel of land devoted to a special land use tax program was split in two by the owner in 1999, one part to an *inter vivos* trust, the other to a family limited partnership. The Court upheld the lower court's ruling that the rollback taxes should not be assessed because the two parcels were continued in the use for which the original was classified prior to the transfer. The lower court had held that the use was continued when the parcels were effectively separated in 1975 because the Commonwealth exercised an eminent domain taking which physically separated the two parcels. However, the Supreme Court held that the eminent domain taking only constituted a physical separation and, in order for a legal separation to occur, the separation must be an *action of the owner*. A taking by eminent domain is not an action of the owner. Therefore, it is not a legal separation. The separation by the owner in 1999 constituted legal separation, and the Court found that the use was still continued.

Respondent relies on this case to show why the Zoning Administrator's policy changed in 2001. After *Sanford v. Board of Zoning Appeals of Albemarle County* in 1990, the policy was to treat an eminent domain taking as legally separating a parcel into two if the separation occurred before December 10, 1980. The *Sanford* court adopted a rule articulated in *City of Winston Salem v. Tickle*, 53 N.C. App. 516, 281 S.E.2d 667, which stated that parcels of land separated by an established city street, in use by the public, are separate and independent as a matter of law. The facts in *Sanford* mirror the ones before the Court: where a state highway dissected a parcel of land, and the land owner then requested another set of five development rights as a result, which he was then granted under the *Tickle* rule. However, the rationale in *Stigall* shadows doubt on the *Tickle* rule.

Petitioner claims that he is not asking the Court to uphold the rationale of the *Tickle* court, but only to rely on that used in *Sanford*. While Petitioner's argument is duly noted, the Court cannot escape the fact that the brief opinion in *Sanford* relies entirely on the rule articulated in *Tickle*. Therefore, it was

necessary for the Court to look past *Sanford* in some regards in determining the applicability of the BZA's policies before and after the ruling in *Stigall*.

The question in this instance is to decide if the *Stigall* holding, which concerned the tax consequences of property separation by an eminent domain taking, overrules the *Sanford* holding, which applies to the creation of a new set of development rights. The Court finds that the *Stigall* opinion adequately distinguishes between physical separation and legal separation of parcels, the central issue in deciding whether two "parcels of record" exist. Even though *Stigall* is concerned with separation for tax consequences, the definition of legal separation is convincing: "The creation of new lots, pieces, or parcels of land is a legal separation of property because it results from action by the owner and involves, at a minimum, a change in the legal description of the property, either by metes and bounds or by plat, which is duly recorded in the appropriate land records." *Stigall* at 705. The Court is persuaded even further by *Stigall* in that *Stigall* did not simply distinguish between physical and legal separation, but it did so in the context of an eminent domain taking, the central issue in the case at hand. The *Tickle* rule did not require an affirmative action by the owner, but merely relied on physical separation by eminent domain to create legal separation. This analysis is flatly rejected by *Stigall*'s definition of legal and physical separation.

The record shows that, as of the deciding date for what may be considered a "parcel of record" for purposes of receiving development rights, Parcel 14 was still identified in the deed book by its 1907 acreage. Neither its northern nor southern pieces were ever legally separated by a plat, deed, or other legal document created by the owner. Nothing in the record has been presented by Petitioner that would prove to be an "action of the owner" prior to December 10, 1980, which would change the legal description of the original parcel. Following the rule established in *Stigall*, the legal description of the property was never changed, and being such, legal separation did not occur.

The Zoning Administrator's policy correctly applies the current rule of law distinguishing between legal and physical separation. In order to give meaning to the phrase "parcel of record," which is undefined in the Zoning Ordinance, the Administrator and the BZA used the definition of "lot of record," which is a lot shown on a subdivision plat or other lawful plat or legal description which is lawfully recorded in the Clerk's Office, to come to the conclusion that since Petitioner had not recorded a deed or plat prior to December 10, 1980, Parcel 14 was not legally separated even though it was physically separated by Interstate 64. Petitioner claims that the real *issue* concerns how many development rights attach to Parcel 14, yet in order to come to that *conclusion*, the Court, and the BZA, had to consider whether Parcel 14 was in fact legally separated by the eminent domain taking. By

logically defining "parcel of record" as a lot which had been legally recorded prior to December 10, 1980, the BZA properly interpreted the legal separation requirement addressed in *Stigall*. This Court holds that the conclusions reached by the Administrator and the BZA were correctly applied.

## Ruling

For the reasons stated above, the Court finds that Parcel 14 is not legally separated into two parcels even though Interstate 64 crosses the parcel. Because only one parcel of record existed as of December 10, 1980, Petitioner cannot receive a second set of development rights.